**Thomas L. PALMER, Appellant-Defendant,**

v.

**STATE of Indiana, Appellee-Plaintiff.**

No. 284S74.

Supreme Court of Indiana.

Dec. 12, 1985.

 

 
 
 
 
 
 

 

 
 
 
 
 
 

 

 
 
 

 

 
 
 
 

 

 
 
 
 
 

 

 
 
 
 
 

 

 
 
 

George W. Gesenhues, Jr., Lorch Moyer Gesenhues & Bitzegaio, New Albany, for appellant-defendant.

Linley E. Pearson, Atty. Gen. of Ind., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

SHEPARD, Justice.

This is a direct appeal from a jury conviction for rape, a class B felony, Ind.Code § 35–42–4–1(a) (Burns 1985 Repl.). Appellant-defendant, Thomas L. Palmer, received a prison term of twenty years.

Appellant raises the following five issues in this appeal:

(1) Whether the Indiana insanity defense statute denies due process and equal protection;

(2) Whether the statute permitting a verdict of guilty but mentally ill is unconstitutional because it permits convictions absent proof of intent beyond a reasonable doubt;

(3) Whether appellant's tendered instruction regarding post-trial insanity proceedings was erroneously refused by the trial court;

(4) Whether the trial court erred by refusing to appoint a medical expert to assist in the preparation of appellant's defense; and

(5) Whether the trial court erred by denying appellant's motion for mistrial based upon alleged prosecutorial misconduct stemming from improper cross-examination.

These are the facts which tend to support the trial court's judgment. On December 8, 1982, the prosecutrix was raped several times by appellant. Appellant went to the victim's house at ten o'clock that evening. The two were conversing when suddenly appellant struck her face, twisted her arm behind her back, taped her mouth, removed her clothes, and tied her hands with twine. Appellant brought the tape and twine with him to the victim's house. He had borrowed blue duct tape, similar to the tape exhibited as State's evidence, from a friend shortly before he went to the victim's house. Appellant testified that he loved the victim and intended to knock her unconscious so he could have sexual intercourse with her. After appellant made sure that the front and back doors were locked, he raped the victim at least three times during a five hour period. Appellant left her house at 3:30 a.m. and was subsequently arrested.

After being advised of his constitutional rights, appellant waived these rights and gave a full confession to the police. The waiver and taped confession were both admitted into evidence at his trial. While he was incarcerated, appellant wrote a letter to the prosecutrix wherein he apologized and also requested that the victim ask the prosecutor to seek help for him rather than a prison sentence.

Prior to trial appellant filed notice of his insanity defense. The three court appointed psychiatrists who examined him concluded appellant was probably legally sane at the time he committed the offense, although he did exhibit an anti-social personality and had a history of alcohol and drug abuse. The psychiatrists further testified that appellant's ability to function was not impaired by any psychiatric disorder.

During the trial several witnesses, including close friends of appellant who were called to testify on his behalf, opined that he knew right from wrong. In addition, the victim testified that when appellant raped her he stated that this "was about the worse thing that anyone could do to anybody." Appellant admitted that he went to the victim's house "with the intention of destroying" her. He was frustrated because he felt that the victim had "jilted" him and he wanted "to pay her back". Appellant also testified that he knew what he was doing when he raped her. He also

told one court appointed psychiatrist that he knew he wasn't crazy when he raped her but that he just didn't care at the time.

The jury was presented with the alternative verdicts available under Ind.Code § 35-36-2-3 (Burns 1985 Repl.) when the insanity defense is interposed and returned a guilty verdict.

### I & II Constitutional Issues

Appellant argues that the Indiana insanity defense statute is unconstitutionally vague and that it denies a defendant equal protection and due process of law. He maintains that the distinctions between the insanity and guilty but mentally ill verdicts permitted under Ind.Code § 35-36-2-3 (Burns 1985 Repl.) are insufficiently drawn and are not based on scientific psychological definitions. He contends that the court-appointed psychiatrists used these terms interchangeably and inconsistently and that therefore they were confused about the meaning of these statutory definitions.

■ This Court has previously determined that the insanity statute does not violate equal protection or due process of law. *Green v. State* (1984), Ind., 469 N.E.2d 1169; *Taylor v. State* (1982), Ind., 440 N.E.2d 1109. We similarly found that the statutory definitions of mentally ill and insanity are not unconstitutionally vague. *Taylor*, 440 N.E.2d at 1111-1112. While the psychiatrists' testimony does not appear to be confusing, such confusion would be an insufficient basis to establish the unconstitutionality of this statute.

Appellant also claims that the guilty but mentally ill verdict permits convictions absent proof of intent beyond a reasonable doubt. Essentially, appellant maintains that a person who is mentally ill is unable to entertain the requisite *mens rea*, yet, such a person may be convicted of a crime under the provisions of this statute which permit a verdict of guilty but mentally ill.

■ Appellant does not have standing to raise this issue. To have standing to challenge the constitutionality of a statute appellant must establish that his rights were adversely affected by the operation of the statute. *State v. Clark* (1966), 247 Ind. 490, 217 N.E.2d 588; *Terrel v. State* (1976), 170 Ind.App. 422, 353 N.E.2d 553. In this case, the jury had to find that appellant intended to rape the prosecutrix before rendering their guilty verdict. Appellant was therefore not harmed by the alleged defect in the guilty but mentally ill statute. Moreover, if there was any error, we deem it to be harmless error beyond a reasonable doubt. There is little probability that the availability of the guilty but mentally ill verdict contributed to appellant's conviction and thereby affected his substantial rights. *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

### III Instructions

Appellant argues that his tendered instruction regarding the post-trial insanity proceedings was erroneously refused by the trial court. The trial court submitted to the jury forms of verdicts tracking verbatim the alternatives contained in Ind. Code § 35-36-2-3. Appellant claims that a form containing the phrase "not responsible by reason of insanity" incorrectly suggests to the jury that the defendant would be set free if the jury returns this verdict. He maintains that the following tendered instruction was necessary to cure the misleading impression which was allegedly conveyed to the jury by the verdict forms:

> The Court further charges you that if you find the defendant, Thomas L. Palmer, not guilty by reason of mental disease or defect, this does not mean that he will be free to live in society again. Under our law if a person is acquitted by reason of mental disease or defect, this Court may order him to the care and custody of the Department of Mental Health for commitment if he is considered mentally incompetent and/or dangerous to himself or to others.

■ Appellant is not entitled to have the jury instructed on the statutory procedure to be followed upon a verdict of not responsible by reason of insanity, *Tyson v. State* (1979), 270 Ind. 458, 386 N.E.2d 1185; *Johnson v. State* (1977), 265 Ind. 689, 359

N.E.2d 525, unless an erroneous view of the law has been presented to the jury. *Dipert v. State* (1972), 259 Ind. 260, 286 N.E.2d 405. An instruction on the post-trial insanity proceedings should not be given to the jury when the record does not indicate that the jury has been erroneously informed. *Dailty v. State* (1980), 273 Ind. 595, 406 N.E.2d 1172. Here, the verdict forms recited the precise words of the statute. We fail to see how those words can be said to convey an erroneous impression of the law. The trial court is affirmed on this question.

### IV Expert Assistance

Appellant argues the trial court erred by refusing to appoint a medical expert to assist in the preparation of his defense. On January 24, 1983, appellant filed his notice to interpose the insanity defense and moved the court to appoint three psychiatrists to examine him. Two days later the trial court ordered that defendant be examined "by three (3) psychiatrists for the purpose of determining whether or not he was sane or insane at the time of the commission of the offense of Rape and whether or not he is presently able to stand trial and aide in his defense." After the examinations were conducted, the psychiatrists filed their psychiatric evaluations and the State delivered the psychiatric evaluations to appellant. Two days later, counsel filed a motion for the provision of funds to hire a medical expert to assist in the preparation of defendant's insanity defense. This motion was based upon the need to "provide the defendant with his equal protection, fair trial, and effective assistance of counsel rights." The trial court denied the motion. Appellant claims the trial court's refusal to appoint an expert constituted an abuse of discretion and was prejudicial to the preparation of his case because:

(1) the court appointed psychiatrists did not comprehend our insanity defense statute, and

(2) the court appointed psychiatrists conducted a cursory one-hour examination of appellant and did not investigate his life history or family background.

Indiana has long recognized that it is appropriate under certain circumstances to appoint experts to assist a defendant in preparation for trial. The trial court must provide access to experts where it is clear that prejudice will otherwise result. *Hashfield v. State* (1965), 247 Ind. 95, 210 N.E.2d 429; *Weaver v. State* (1966), 247 Ind. 315, 215 N.E.2d 533. The decision of the trial judge on a defendant's request has been reversed only on a showing of abuse of discretion. *Bimbow v. State* (1974), 161 Ind.App. 338, 315 N.E.2d 738.

Appellant argues that the psychiatrists appointed in this case showed "very little comprehension of the Indiana statutory scheme relating to the insanity defense" and that this lack of understanding constituted prejudice which could have been avoided had the court provided him with funds to hire his own expert. As our earlier discussion of the testimony of these witnesses suggests, we disagree with appellant's view of their competence and would not find the trial judge's decision to be an abuse of discretion under our traditional rules.

Appellant has filed additional authority which suggests that Indiana's practice should be reviewed in light of *Ake v. Oklahoma* (1985), —— U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53. The United States Supreme Court has found that due process requires a state to provide indigent defendants with access to psychiatric assistance:

> We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defend-

ant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the State the decision on how to implement this right.

*Ake*, 105 S.Ct. at 1097.

■ Our law provides that in any case in which the defendant intends to interpose the defense of insanity the trial court shall appoint two or three medical experts, at least one of whom shall be a psychiatrist, "to examine the defendant and to testify at trial." The statute requires that these witnesses be called following all the evidence presented by the State and by the defendant. Ind. Code § 35–36–2–2. Thus, a defendant in Indiana need not face the problem Glen Burton Ake had in Oklahoma: having the burden of proof on the issue of insanity but lacking the resources even to be examined. We regard the examination and testimony provided under our law as satisfying a part of the requirement of *Ake*.

■ It may well be that the psychiatrists appointed by the trial court will not have reached conclusions satisfying to the defendant (or to the prosecutor, for that matter), but the defendant clearly does not have the right to receive funds to hire a psychiatrist of his own choosing. *Ake, id.; Norris v. State* (1979), 271 Ind. 568, 394 N.E.2d 144. In this respect, we believe Indiana's system of appointing at least two disinterested experts for trial provides a more reliable fact-finding basis than would a system in which both sides show up for trial with their own "hired guns."

Our statutory scheme should be read in a way that complies with *Ake* in another respect—by making the court appointed experts available for consultation with counsel. In order to be effective at trial, counsel must have access to a psychiatrist with whom to explore the details of the defendant's mental condition, formulate an understanding of the questions which will be at issue, and inquire about the validity of observations being made by other witnesses. Any discussions between counsel and the psychiatrist would necessarily be conducted *ex parte*, but never before the examination of the defendant. To the extent that these consultations will add to the fees charged by the psychiatrist, oversight of the extent of the additional expense will lie within the discretion of the trial court.

■ An additional element of *Ake* is the requirement that a defendant make a threshold showing to the trial court that his sanity is likely to be a significant factor in his defense before he is entitled to psychiatric assistance. Where this threshold is not met, the defendant does not acquire the right to an expert. *Caldwell v. Mississippi* (1985), —— U.S. ——, 105 S.Ct. 2633, 86 L.Ed.2d 231. Since our statute provides for appointment of medical experts upon the simple filing of the defense of insanity, we conclude that our law exceeds the assistance required under *Ake*.

■ In short, when appointing medical experts under Ind. Code Section 35–36–2–2, the trial court should include in its order that the psychiatrist be available for consultation with counsel during preparation for trial.

With this framework in mind, the two cases handed down today illustrate the operation of the rule. In the case at bar, appellant Palmer requested funds to hire his own expert and asserts on appeal that the nature of the testimony given by the court-appointed witnesses proves he has been prejudiced by the trial court's denial of his request. We find that a defendant is entitled to access to an expert, not access to an expert who sees the case his way. He is not entitled to the funds necessary to go out and find a favorable witness. Accordingly, we do not find the trial court's denial of appellant's request to be error.

We believe the practice followed in *Ashby v. State*, (1985), Ind., 486 N.E.2d 469, decided today, exceeds the requirements of *Ake*. Ashby had been examined and treated by doctors while hospitalized. Counsel asked the court to permit him to consult with these doctors and to call them as witnesses at public expense. This request was granted.

## V Prosecutorial Misconduct

Appellant claims the trial court erred by denying appellant's motion for mistrial based upon alleged prosecutorial misconduct stemming from improper cross-examination. When cross-examining appellant, the prosecutor decided to "get into the credibility issue a little bit." The prosecutor questioned inconsistencies between appellant's testimony and that of a defense witness as well as inconsistencies between appellant's trial testimony and his confession. The prosecutor then queried:

Q524 Did you ever tell Garrett [appellant's friend and a defense witness] about your prior rape conviction?

A No, not that I know of.

Q525 Isn't it true you told him something about being in a fight with some motorcycle gang and that's why you'd been in jail?

A No.

There was no contemporaneous objection made to the prosecutor's question about the motorcycle gang. The defense rested and the State did not present rebuttal evidence. The defense then moved for a mistrial based upon this question. The State then moved to reopen the case and examine Garrett Hannigan. The court reopened the case and took the mistrial motion under advisement. The State examined Hannigan as follows:

Q2 Did Tom Palmer at any time tell you why he was incarcerated prior to this rape incident?

A There were times he was vague about it but he did mention an incident. I believe it was outside a bar where he was in a fight with three other gentleman [sic].

Q3 And did he say anything about being in a fight with a motorcycle gang?

A There possibly was a reference to the fact that they were, maybe on a motorcycle but not necessarily say, a gang, per se.

Q4 Was that the basis for his serving time in prison?

A It was my understanding through his comment that that was true sir.

Appellant then renewed his mistrial motion. The motion was denied but the trial court instructed the jury to disregard the motorcycle gang question and answer. Appellant maintains that this question constituted prosecutorial misconduct because the question had no factual basis and was prejudicial because the jury could infer prior criminal conduct with motorcycle gangs.

The decision to grant a motion for mistrial lies within the sound discretion of the trial court. *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153. In order to establish that a denial of a mistrial motion constituted an abuse of discretion, the appellant must demonstrate that he was placed in a position of grave peril to which he should not have been subjected. *Holliness v. State* (1984), Ind., 467 N.E.2d 4. The declaration of a mistrial is an extreme action which is warranted only when no other recourse could remedy the perilous situation. *Bedwell v. State* (1985), Ind., 481 N.E.2d 1090. Generally, this Court will not find reversible error when the trial court admonishes the jury to disregard the statement made during the proceedings. *Reese v. State* (1983), Ind., 452 N.E.2d 936. Assuming *arguendo* that the prosecutor's question was improper, we do not deem this conduct to have placed appellant is a position of grave peril. The trial court did not err.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.