Carl P. FLEENER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 41A01–9407–CR–236.

Court of Appeals of Indiana,
First District.

March 22, 1995.

Richard L. Tandy, Greenwood, for appellant.

Pamela Carter, Atty. Gen., Suzann Weber Lupton, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Carl P. Fleener appeals from his convictions on three counts of Child Molesting, all as Class B felonies. We affirm.

### ISSUES

Fleener raises eleven issues for our review on appeal, which we consolidate and restate as:

1. Whether the trial court erred when it allowed testimony from the victim's mother and grandmother regarding statements made by the victim.

2. Whether the trial court erred when it allowed testimony from an examining physician concerning the types of abuse perpetrated against the victim.

3. Whether the trial court erred when it allowed the testimony of the psychologist who treated the victim.

4. Whether the trial court erred when it admitted State's Exhibit Number Seven.

5. Whether the trial court erred when it allowed the State to pose three hypothetical questions to an expert witness.

6. Whether the trial court erred when it denied Fleener's motion for a mistrial based on alleged prosecutorial misconduct.

## FACTS

Fleener was charged with three counts of child molesting, all as class B felonies, for acts perpetrated against his seven-year-old stepdaughter, T.S., during "the fall or winter of 1990." Record at 31, 33 and 35. At trial, T.S., who was then ten years old, testified regarding acts of anal intercourse, digital-vaginal penetration, and oral sex committed against her by Fleener. T.S.'s younger brother also testified and described an act of anal intercourse which he inadvertently witnessed.

The State presented testimony from Dr. Julie Marks, a pediatrician who examined T.S., and Susan Watson, a psychologist who treated T.S. over the course of one year and three months following these incidents. Dr. Marks testified that T.S.'s physical condition included scarring and thickening of the hymeneal ring, and that such symptoms were indicative of the type of abuse alleged. Watson testified that T.S. suffered from post-traumatic stress syndrome or disorder and that she also exhibited symptoms characteristic of victims of child sexual abuse.

After a trial, the jury found Fleener guilty on each count of child molesting. The trial court then sentenced him to a term of fifteen years, with ten years executed and five years suspended on each count, to be served concurrently.

## DISCUSSION AND DECISION

### Issue One: Testimony of Grandmother and Mother

Fleener first asserts that the trial court erred when, over his hearsay objection, the court allowed T.S.'s grandmother and mother to testify separately regarding statements made by T.S. about the molestations after they had occurred. The State responds that T.S.'s grandmother's testimony was properly admissible pursuant to an exception to the hearsay rule and that her mother's testimony was not hearsay, but rather was admissible to show a course of conduct. We agree with the State in both respects.

First, the State offered the testimony of Shirley Taylor, T.S.'s grandmother, and asked Taylor whether T.S. "had ever made physical complaints to her during the fall or winter of 1990." Record at 251. Taylor answered that when she gave the child a bath during that period, T.S. "always complained that her bottom was sore." Record at 254. Although Fleener objected on hearsay grounds, the trial court allowed Taylor's testimony.

Taylor's testimony concerning T.S.'s complaints was hearsay. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind.Evidence Rule 801(c). Hearsay is not admissible at trial unless admitted pursuant to a recognized exception. Ind.Evidence Rule 802. However, "[a] statement of the declarant's then existing ... sensation or physical condition (such as ... pain and bodily health)," may be admitted under the exception permitted in Evidence Rule 803(3). Such was the case here.

T.S., the declarant, made a statement of her then existing sensation or physical condition at a time when she was perceiving this condition, that is, while she was being bathed. See 13 R. MILLER, INDIANA PRACTICE § 803.103B at 622–23 (1995). Therefore, under Rule 803(3), the statement was admissible as an exception to the hearsay rule. The trial court did not err.

Next, during the rebuttal portion of its case, the State offered the testimony of T.S.'s mother, Lisa Bean. Bean was questioned about the reasons that led to her divorce from Fleener following the allegations of child molestation. Instructing her to respond either yes or no, the prosecutor asked Bean whether the divorce occurred because T.S. told her that Fleener had "done something to her." Record at 606. Again, Fleener objected on hearsay grounds and was overruled. The prosecutor argued that Bean's testimony was not hearsay but was instead offered to demonstrate a course of action, why Bean and Fleener had obtained a divorce. Bean then responded affirmatively to the State's question and, as requested, did not elaborate.

Bean's testimony was elicited by the State to rebut a suggestion raised by Fleener during his testimony that T.S.'s mother and grandmother had encouraged the victim's complaint of sexual abuse and had fabricated her story. Fleener testified on direct that Bean had thrown him out of the house one day *before* T.S.'s allegations of molestation were publicly revealed and that he never understood why he was ordered to leave. On rebuttal, the State then asked Bean why she ended her marriage to Fleener in such an abrupt manner. Bean explained that her daughter's revelations of abuse precipitated the divorce.

We agree with the State that Bean's testimony was not offered to prove the truth of the matter asserted and, thus, was not hearsay. Rather, her statement was offered to explain to the jury why her marriage to Fleener had ended. The trial court did not err when it allowed Bean's testimony.

### Issue Two: Testimony of Physician

Fleener contends the trial court erred when, over his hearsay objection, the court allowed certain testimony of Dr. Julie Marks, the physician who examined T.S. in the child sexual abuse clinic of Wishard Hospital in Indianapolis. The State responds that the testimony was not hearsay. We agree with the State.

During the State's direct examination of Dr. Marks, the prosecutor asked Marks "what acts of abuse were alleged" as part of T.S.'s medical history which prompted her examination. Record at 298. Fleener immediately asserted a hearsay objection and requested permission to ask preliminary questions of the witness, which the court allowed. After Fleener completed his preliminary questions and reasserted his objection, the court allowed the State to question Dr. Marks again. Dr. Marks answered that the alleged acts of abuse were "oral sex, anal intercourse and digital, vaginal penetration." Record at 301.

Dr. Marks' testimony on this point was not offered to prove the truth of the matter asserted. Dr. Marks' indicated in her testimony that she obtained T.S.'s medical history prior to conducting her examination, as was her usual practice. She testified that "[t]he history we use usually comes from the accompanying adult, or any reports that we have that goes through our social worker in the clinic." Record at 271. According to Dr. Marks, the specific allegations of sexual abuse perpetrated upon T.S. in the present case were communicated to her as a routine part of obtaining T.S.'s medical history. Finally, the State questioned Marks regarding whether her findings were consistent with the allegations of abuse that had been made, to which Marks replied affirmatively. Dr. Marks then recited the alleged acts of abuse.

In order to establish the relevancy of Dr. Marks' testimony concerning whether her conclusions were consistent with the alleged acts of abuse, it was necessary for the jury to be aware that Dr. Marks had prior knowledge of those allegations. Thus, Dr. Marks' statement was offered to support the validity of her professional conclusions, not to prove the truth of the allegations. We conclude the trial court did not err.

### Issue Three: Testimony of Psychologist

Next, Fleener raises a number of contentions regarding the testimony of Susan Watson, a psychologist who treated T.S. over the course of one year and three months following the acts of molestation. Fleener asserts the trial court erred when it allowed Watson to testify about (a) T.S.'s perception of reality, (b) characteristics common among victims of child abuse and whether T.S.'s behavior

was consistent with those characteristics, (c) statements made by T.S. during therapy sessions, and (d) T.S.'s propensity to exaggerate or fantasize about sexual matters. The State maintains that the trial court did not err in allowing such testimony. The State is correct.

### A. Victim's Perception of Reality

■ During the State's direct examination of Watson, she was asked for her opinion "as to [T.S.'s] perception of reality." Record at 391. Fleener objected and argued that Evidence Rule 704(b) prohibited a witness from giving such an opinion because it invaded the province of the jury. After the trial court overruled Fleener's objection, Watson answered that T.S. "is in touch with reality." Record at 394. Watson then went on to explain upon what factors her opinion was based.

Evidence Rule 704(b) prohibits a witness from testifying as to "opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Rule 704(b) was designed to preserve existing Indiana law by providing that witnesses may not testify to certain specified subjects. *See* 13 R. MILLER, § 704.201 at 446.

■ Our supreme court has previously recognized that testimony on a subject such as a victim's perception of reality is not improper and does not invade the province of the jury. *See Lawrence v. State* (1984), Ind., 464 N.E.2d 923, 925. Although the direct assertion of a witness's belief in the child's testimony is prohibited, the fact that testimony regarding the victim's perception of reality may also bolster the victim's credibility does not render such testimony improper. *See Wright v. State* (1991), Ind.App., 581 N.E.2d 978, 980–81; *Jarrett v. State* (1991), Ind.App., 580 N.E.2d 245, 250, *trans. denied.* We conclude Watson's testimony that T.S. "is in touch with reality" was not inadmissible under Rule 704(b) and, thus, the trial court did not err.

### B. Characteristics of Child Abuse

■ Immediately following her testimony concerning T.S.'s perception of reality, the State asked Watson to list some of the characteristics shared by children who have been sexually abused. Although Watson began to answer, Fleener objected that the State had failed to lay a proper foundation for the question under Evidence Rule 702. The State again summarized Watson's lengthy experience in diagnosing and treating victims of sexual abuse, which also had been elicited at the beginning of her testimony, and the trial court overruled Fleener's objection.

■ Evidence Rule 702 governs the admissibility of testimony by experts and performs a number of functions, which includes providing the criteria to be applied in determining whether an individual qualifies as an expert. While it did not change prior law, Rule 702 provides that an expert may be qualified by reason of his or her "knowledge, skill, experience, training, or education." Any one of these characteristics alone, or a combination thereof, may qualify an individual as an expert. *See Wissman v. State* (1989), Ind., 540 N.E.2d 1209, 1212–13. Further, the sufficiency of the foundation for expert testimony is a matter within the sound discretion of the trial court. *Jenkins v. State* (1993), Ind., 627 N.E.2d 789, 797, *cert. denied* (1994), —— U.S. ——, 115 S.Ct. 64, 130 L.Ed.2d 21. We will reverse only upon a showing of an abuse of that discretion. *Id.*

Here, Susan Watson testified extensively regarding her education and training as a psychologist. Watson stated she had a master's degree in Social Work and had "completed all the social work for a Ph.D in Psychology, with my dissertation pending . . . which focuses on the treatment models for sexual abuse victims." Record at 341. She then testified to her experience and skill in treating sexual abuse victims. Watson stated that she had performed "over a thousand hours clinical supervision in the area of troubled children, and adolescents in the areas of sexual abuse." Record at 341.

Watson further testified that she had spent 14 years in practice and that she devoted approximately "65 to 75%" of her time counseling sexually abused children. Record at 342–43. She stated that she had been certi-

fied as a sexual abuse expert witness on 42 prior occasions. Therefore, pursuant to Evidence Rule 702, we conclude the trial court did not abuse its discretion when it overruled Fleener's objection and found that Watson was an expert with experience sufficient to allow her to testify regarding those characteristics which are common among child sexual abuse victims. *See id.*

In addition, after Watson listed a number of the common characteristics of child sexual abuse victims, the State asked her whether T.S.'s behavior was consistent with any of those characteristics. Watson answered affirmatively and, without objection, recited that T.S. exhibited a number of those traits. Watson then testified that, from her observations, T.S. suffered from "post-traumatic stress syndrome or . . . disorder." Record at 400.

While Fleener did not object to that line of questioning or to Watson's answers, he did object to a subsequent question by the State on the same issue. The prosecutor asked Watson if she had "learned anything about [T.S.] which is *inconsistent* with the behavior of a child who's been sexually abused?" Record at 450 (emphasis added). Fleener again objected on the ground that Rule 704(b) prohibited a witness from giving such an opinion because it invaded the province of the jury. However, as we have stated above, because the question did not call for Watson to give direct testimony regarding her assessment of T.S.'s veracity, it was not improper. *See Wright,* 581 N.E.2d at 980–81; *Jarrett,* 580 N.E.2d at 250. The trial court did not err.

### C. Victim's Statements

■ Following her testimony that T.S. suffered from post-traumatic stress syndrome, Watson was asked by the State to explain how the process of diagnosis works and from which symptoms T.S. suffered. Watson noted that evidence of the symptoms must be reported by the patient to be considered and then explained the first criterion, an inability to exclude the traumatic incident from the conscious mind. Watson testified that "[T.S.] met this one . . . she could not get it off her mind. . . ." Record at 407–08. Fleener immediately objected on hearsay grounds and

also asserted a lack of foundation for the question.

The State responded that the evidence was admissible pursuant to Evidence Rule 803(4), an exception to the hearsay rule, as necessary for Watson's medical diagnosis or treatment of T.S. The trial court overruled Fleener's objection and allowed Watson's testimony. On appeal, Fleener argues that Watson's testimony was not admissible pursuant to Rule 803(4) because T.S.'s statements to her were not made to a "medical physician" and "the diagnosis was accordingly not a medical diagnosis or treatment." Brief of Appellant at 22.

Evidence Rule 803(4) provides, among other things, that "statements made for purposes of medical diagnosis or treatment and describing medical history" are not excluded by the hearsay rule. While such statements usually will be made to a physician, they may be made to someone other than a physician where the out-of-court declarant subjectively believes that he is making the statement in contemplation of receiving medical diagnosis or treatment. *See* 13 R. MILLER, § 803.104 at 625.

This interpretation of the rule is also consistent with that given to Indiana's counterpart, Federal Rule of Evidence 803(4). Federal Rule 803(4) does not exclude statements made to persons other than physicians. *See United States v. Newman* (7th Cir.1992), 965 F.2d 206, 210, *cert. denied* (1992), —— U.S. ——, 113 S.Ct. 470, 121 L.Ed.2d 377 (with regard to statements made to psychologist, court stated: "[i]s psychology medicine? For purposes of the rule, it is."); *accord United States v. Yellow* (8th Cir.1994), 18 F.3d 1438, 1442; *United States v. Farley* (10th Cir.1993), 992 F.2d 1122, 1125. Thus, the fact that Watson is not a physician does not render her testimony inadmissible.

■ The only remaining question is whether T.S.'s statements to Watson were made in contemplation of medical diagnosis or treatment. Rule 803(4) limits admissibility under the exception to statements that are "reasonably pertinent to [the] diagnosis or treatment" sought. First, Watson testified that T.S. was referred to her by the Johnson County Welfare Department because her

mother "wanted her child in counseling" and because T.S. "stated that she wanted help." Record at 417–18. Watson subsequently counseled T.S. during 30 sessions over a 15 month period.

Watson's challenged testimony concerned her nonspecific references to statements made by T.S. that she could not exclude thoughts of the molestations from her mind. Indeed, T.S.'s statements at issue here were "describing . . . past or present symptoms," as contemplated by Rule 803(4). Watson testified that T.S.'s statements were one of the bases for her diagnosis that T.S. suffered from post-traumatic stress syndrome. Therefore, according to Rule 803(4), T.S.'s statements were "reasonably pertinent to diagnosis or treatment." The trial court did not err in allowing Watson to testify in this regard.

### D. Propensity to Exaggerate

■ Finally, the State questioned Watson whether she had an opinion as to T.S.'s propensity to exaggerate or fantasize about sexual matters. Fleener objected and asserted that Evidence Rule 704(b) prohibited that question because it invaded the province of the jury. The trial court overruled his objection and allowed Watson to answer. Watson responded that T.S. was not prone to exaggerate or fantasize.

As stated above, our courts have previously ruled that it is not error to allow an expert to testify regarding a child's propensity to fantasize about sexual matters. *See Jarrett*, 580 N.E.2d at 250. The fact that a question seeks to elicit information which may bolster the credibility of the witness does not make the question improper. *Id.* The State's question to Watson did not call for her to give a direct statement regarding whether she believed T.S. was telling the truth. Therefore, the trial court did not err when it overruled Fleener's objection and allowed Watson's testimony on this issue.

### Issue Four: Admission of State's Exhibit Seven

■ Fleener contends the trial court erred when, over his objection, the court admitted into evidence a copy of the list of diagnosis criteria for post-traumatic stress

syndrome from the "Diagnostic and Statistic Manual." Admission of this manual followed Susan Watson's testimony that T.S. suffered from post-traumatic stress syndrome. Watson testified that the manual was the "only guide book" used in the "profession of psychology" for "diagnosing various emotional and mental difficulties." Record at 401. The State moved to admit this copy from the manual as an "illustrative exhibit." Record at 402. Fleener objected on the ground of a lack of foundation, but he was overruled.

■ Although he did not rely on it at trial, Fleener argues on appeal that Evidence Rule 703 prohibits admission of the manual because the State failed to show that it was "of the type reasonably relied upon by experts in the field." *See* Ind.Evidence Rule 703. However, Watson, a practicing psychologist, testified that the exhibit was a "reprint from our manual with the diagnosis criteria for post-traumatic stress disorder." Record at 402. She then stated that the manual from which the exhibit was taken was used both by her and by others in her field and, indeed, was the only such manual used. The sufficiency of an evidentiary foundation is generally a matter left to the trial court's sound discretion, and we will reverse only for an abuse of that discretion. *Cobb v. State* (1992), Ind.App., 585 N.E.2d 40, 43.

We conclude the State laid a sufficient foundation for admission of its Exhibit Seven. Thus, the trial court did not abuse its discretion.

### Issue Five: Hypothetical Questions of Prosecutor

■ Fleener's next contention is that the trial court erred when, during direct examination of Susan Watson, it allowed the prosecutor to ask three hypothetical questions to elicit Watson's opinion concerning a child victim's (1) delay in reporting sexual abuse, (2) inability to recall specific dates of the acts in question and (3) lack of emotion when talking about those acts. Each hypothetical was based upon facts introduced at trial. Fleener objected to each question on the ground that it elicited improper bolstering testimony under Rule 704(b), and that Watson was offering her opinion regarding T.S.'s

veracity and Fleener's guilt. The trial court overruled each objection.

As we have stated, Evidence Rule 704(b) prohibits any witness from testifying "to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations, whether a witness has testified truthfully, or legal conclusions." However, otherwise admissible opinion testimony "is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact." Ind.Evidence Rule 704(a). In other words, so long as the opinion testimony does not "take the direct form of 'I believe the child's story,'" or "'in my opinion the child is telling the truth,'" it is proper under the rule. *Wright v. State* (1991), Ind.App., 581 N.E.2d 978, 981 (quoting *Lawrence v. State* (1984), Ind., 464 N.E.2d 923, 925).

 Further, "where an expert is to give opinion testimony in the form of an answer to a hypothetical question, ... [a] proper foundation must be laid which is two-fold." *Henson v. State* (1989), Ind., 535 N.E.2d 1189, 1191. First, the expert's ability to give such an opinion must be established through testimony showing he has the requisite knowledge, skill, education or experience on which to base the opinion, although firsthand knowledge of the facts are not required. *Id.* Second, there must be a proper evidentiary foundation supporting the facts that are included in the hypothetical question. *Id.* at 1192. While "a hypothetical question is proper if it embraces facts that have been placed into evidence," it need not "include all pertinent facts that are in evidence." *Id.*

Here, both foundational requirements were met. The prosecutor asked Watson to use her experience and training, which had previously been established, to contemplate a hypothetical situation involving sexual abuse similar to the facts in the present case. Each hypothetical question requested that Watson consider typical victims, rather than T.S. in particular, and opine whether such a victim might act in a manner similar to T.S. In addition, Watson was not asked to give a direct opinion concerning whether she believed T.S., or whether Fleener was guilty or innocent. We conclude the trial court did not err when it allowed the State to pose three hypothetical questions to Watson about typical victims of sexual abuse.

### Issue Six: Motion for Mistrial

 Finally, Fleener asserts that the trial court erred when it denied his motion for a mistrial. The State responds that Fleener waived any error on this issue because his motion was not timely. The State further asserts that even if this issue was not waived, the trial court did not err because its admonishment to the jury was adequate to cure any prejudice to Fleener. We agree with the State.

During the State's cross-examination, the prosecutor asked Fleener why T.S. would have made the accusations that were the basis for the charges against him. Fleener's counsel objected that the question called for speculation, but the objection was overruled. The following discussion then transpired:

FLEENER: In my opinion, uh, the child could have been coached.

STATE: Who would have coached the child?

FLEENER: Either her Grandmother or her Mother.

\* \* \* \* \* \*

STATE: *Do you have any evidence of that?*

Record at 577 (emphasis added). Before Fleener could answer the State's question, his counsel objected to the "form of the question." Record at 577. The objection was again overruled. Cross-examination of Fleener resumed as follows:

FLEENER: If I had total proof to that then I wouldn't be on trial now.

STATE: Do you have any proof? Yes or no.

FLEENER: Not, other than—

STATE: Yes or no. Do you have any proof?

FLEENER: I can say yes and no.

STATE: Then I guess it would be that you do have some proof?

FLEENER: My proof is in the statements of the children themselves.

Record at 578. Thereafter, Fleener's counsel made additional objections as to this line of questioning and to the form of the questions asked.

At the close of evidence, the trial court stood in recess until the next day when, after the court's conference on final instructions, Fleener moved for a mistrial. He argued that the State had "repeatedly . . . requested or suggested on more than one occasion . . . that the defendant must prove something, or that he has some burden of proof." Record at 642. Fleener's counsel referred specifically to the State's cross-examination of Fleener.

After the trial court denied his motion, Fleener asked that the jury be admonished prior to closing statements. The court agreed and subsequently admonished the jury that Fleener bore no burden of proof and that he was "not required to present any evidence to prove his innocence or to prove or explain anything." Record at 659–60. However, Fleener charges that the State again made improper statements to the jury during its closing argument, including references to a lack of presented evidence, the ability to convict on the sole testimony of the victim and that the jury should put itself in the place of the victim.

 A mistrial is an extreme remedy granted only when no other method can rectify the situation. *Schlomer v. State* (1991), Ind., 580 N.E.2d 950, 955. A mistrial is warranted only where prosecutorial misconduct places the defendant in a position of grave peril to which he should not have been subjected. *Lopez v. State* (1988), Ind., 527 N.E.2d 1119, 1125. The grave peril standard is determined by the probable persuasive effect of the misconduct on the jury's decision. *Vaughan v. State* (1984), Ind.App., 470 N.E.2d 374, 379, *trans. denied.* Further, the grant or denial of a mistrial is a matter of judicial discretion, and we will reverse only for an abuse of that discretion. *Farrell v. State* (1993), Ind.App., 612 N.E.2d 124, 131. Generally, an admonishment is considered an adequate curative measure for any prejudice which results from improper questions posed by a prosecutor. *See Palmer v. State* (1985), Ind., 486 N.E.2d 477, 483.

Here, although he did object to certain questions posed by the prosecutor, Fleener failed to move for a mistrial until the day after the alleged misconduct occurred. Additionally, Fleener failed to object during the State's closing argument, and he did not ask for a mistrial or an additional admonishment at the end of the State's argument. Failure to request admonishment or to move for a mistrial when improper argument or statements are alleged to have occurred results in waiver of that issue. *Zenthofer v. State* (1993), Ind., 613 N.E.2d 31, 34. Thus, Fleener has waived any error by not making a timely motion for mistrial.

Even if Fleener did not waive review of this issue, the trial court did not err when it denied Fleener's motion for mistrial and instead admonished the jury. The trial court gave the jury a thorough admonishment as to the burden of proof of each party and, specifically, that Fleener was not required to prove anything. That measure was adequate to cure any prejudice to Fleener. *See Palmer,* 486 N.E.2d at 483. The judgment is affirmed.

Affirmed.

ROBERTSON, J., and SHARPNACK, C.J., concur.