## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 11 2016, 9:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Emerson Wade Bixler,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

April 11, 2016

Court of Appeals Case No. 71A05-1509-CR-1512

Appeal from the St. Joseph Superior Court

The Honorable J. Jerome Frese, Judge

Trial Court Cause No. 71D03-1410-F4-17

**Bradford, Judge.**

## Case Summary

[1] On October 22, 2014, there was a fire at a South Bend home belonging to Jennifer Daniels. Daniels's neighbor, Appellant-Defendant Emerson Wade Bixler, had been seen walking around the back of Daniels's house minutes before the fire was first reported wearing an orange ski-mask and a teal hat. Appellee-Plaintiff the State of Indiana charged Bixler with Level 4 felony arson. As he was leaving the courthouse following the first day of trial, Bixler made a comment to one of the jurors. Bixler later moved for a mistrial based on the extra-judicial comments, which was denied by the trial court. The jury found Bixler guilty as charged. Bixler raises the following issues on appeal: (1) the trial court should have declared a mistrial based on his extra-judicial statements to the juror; (2) the trial court should not have admitted into evidence an orange ski mask and teal hat which he argues were illegally seized from his garage; and (3) there was insufficient evidence to sustain his conviction. We affirm the trial court in all respects.

## Facts and Procedural History

[2] On October 22, 2014, Jennifer Daniels left her South Bend house around 11:00 a.m. to go to work. Approximately an hour later, Troy Orban, who lives across the street from Daniels and next door to Bixler, was outside doing yardwork. Orban saw Bixler standing at the back, southwest corner of Daniels's house with his three-wheel motorized mobility scooter parked nearby. Although Bixler was wearing an orange ski mask and a teal cap, Orban recognized it was him because he was wearing the same clothes Orban had seen him wearing

earlier in the day and he recognized Bixler's scooter. Orban saw Bixler toss a red container behind the vacant house adjacent to Daniels's house before returning home. About five minutes later, Orban saw Bixler carrying a gasoline canister, which belonged to Orban. Orban asked Bixler what he had been doing on Daniels's property because he was aware that Daniels had told Bixler to stay off the property. Bixler responded only by saying "boo." Tr. p. 181, 182.

[3] Orban took the gas can from Bixler and returned home. Shortly thereafter, Orban's wife told Orban that there was smoke coming from Daniels's house. At approximately 12:20 p.m., St. Joseph Police Officer Rick Morton was dispatched to Daniels's house in response to a reported fire. After the fire was extinguished, Officer Morton approached the back of Daniels's house where he observed three-wheeled scooter tracks in the lawn leading to two broken windows, one of which was on the southwest corner of the house where the fire had been. Officer Morton recovered a red laundry detergent container from the yard of the vacant house adjacent to Daniels's home and noted that the container had a strong odor of gasoline. Officer Morton spoke to Bixler, who was sitting in his garage, and noticed Bixler's three-wheel scooter parked nearby. Officer Morton then arrested Bixler and questioned him about the fire.

[4] Just prior to Bixler's arrest, Officer Morton's partner observed an orange ski mask and teal hat in the garage matching Orban's description of what Bixler had been wearing earlier, and collected the items as evidence. The mask and hat were in plain sight of the officers as they were speaking to Bixler. At trial,

Bixler objected to the admission of these items, arguing that they were obtained via an illegal search of his property prior to his arrest. The trial court allowed the items to be admitted.

[5] Michael Vogely, a fire investigator for the Indiana State Fire Marshal's Office, investigated the fire and determined that it had been intentionally set using an ignitable liquid, such as gasoline. Vogely also concluded that the fire had been started near the exterior southwest corner of the house.

[6] The State charged Bixler with Level 4 felony arson and a jury trial began on July 27, 2015. At trial, Daniels testified that she had repeatedly told Bixler to stay off of her property because he had made inappropriate comments and advances towards her. On two occasions prior to the fire, Daniels had called the police to report Bixler's inappropriate conduct. Orban testified that in January of 2015, Bixler had told him "he wished he would have burned the whole damn house down." Tr. p. 202.

[7] As he was leaving the courthouse following the first day of trial, Bixler yelled to one of the jurors something to the effect of, "hey, take a look at me. Do I look like somebody that would do that?" Tr. p. 102. The juror recounted the incident to the other jurors the next day. The trial court repeatedly admonished the jury that they were to disregard any out-of-court statements made by Bixler. The State then asked the jury members whether "anything [they] heard outside the courtroom yesterday or heard about going on outside the courtroom yesterday, [would] influence [them] one way or the other in this trial," and they

indicated that it would not. Tr. p. 110-111. Bixler moved for a mistrial, arguing that the trial court's admonition of the jury was insufficient to remedy the alleged bias created by Bixler's comments. The trial court denied Bixler's motion. On July 29, 2015, the jury found Bixler guilty as charged. The trial court sentenced Bixler to six years of incarceration with two years suspended to probation.

# Discussion and Decision

[8] Bixler raises the following three issues on appeal: (1) whether the trial court erred in denying Bixler's motion for a mistrial; (2) whether the trial court erred in admitting the hat and ski mask into evidence; and (3) whether there was sufficient evidence to support Bixler's conviction.

# I. Extra-Judicial Contact

[9] The decision to grant a motion for mistrial lies within the sound discretion of the trial court. *Palmer v. State*, 486 N.E.2d 477, 483 (Ind. 1985). The trial court's decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of the event and its impact on the jury. *Mack v. State*, 736 N.E.2d 801, 803 (Ind. Ct. App. 2000), *trans. denied*. The declaration of a mistrial is an extreme action which is warranted only when no other recourse could remedy the perilous situation. *Palmer*, 486 N.E.2d at 483. "In order to prevail on appeal from the denial of a motion for mistrial, a defendant must establish that the questioned information or event was so prejudicial and inflammatory that he or she was placed in a

position of grave peril to which he or she should not have been subjected."
*Bisard v. State*, 26 N.E.3d 1060, 1068 (Ind. Ct. App. 2015) (citing *Burks v. State*, 838 N.E.2d 510, 519 (Ind. Ct. App. 2005)) *trans. denied*.

[10] Bixler's argument fails for several reasons. First, because Bixler was the person responsible for the extra-judicial communication with the juror, he is not entitled to a mistrial. "A defendant who creates his own cause for mistrial presents no error." *Reynolds v. State*, 625 N.E.2d 1319, 1321 (Ind. Ct. App. 1993) (finding that defendant's own outbursts were the source of the alleged jury bias and that defendant could not "predicate error upon his own volunteered statements").

[11] Additionally, the alleged bias did not place Bixler in a position of grave peril. The contact with the jury was minimal and the jury was repeatedly admonished by the trial court. Furthermore, the jury was asked by both the State and Bixler's counsel whether Bixler's comments would in any way affect their determination of the issues, to which the jury indicated that it would not. Bixler offers no explanation on what impact, if any, his statements may have had on the jury, much less how he was put in grave peril. The trial court did not abuse its discretion in denying Bixler's motion for a mistrial.

## II. Admission of Evidence

[12] "We review a trial court's decision to admit or exclude evidence for an abuse of discretion. An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court."

*Payne v. State*, 854 N.E.2d 7, 13 (Ind. Ct. App. 2006) (citations omitted). We will not reweigh evidence and consider conflicting evidence most favorable to the trial court's ruling. *Gray v. State*, 982 N.E.2d 434, 437 (Ind. Ct. App. 2013).

[13]    Bixler argues that the hat and ski mask recovered from his garage were obtained without a warrant and so should not have been admitted at trial.

> To justify a warrantless seizure under the plain view doctrine, a law enforcement officer must not have violated the Fourth Amendment in arriving at the place where items are in plain view, the "incriminating character" of the items must be "immediately apparent," and the officer must have "a lawful right of access" to the items in plain view. *See* [*Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)]; [*Middleton v. State*, 714 N.E.2d 1099, 1101 (Ind. 1999)]. If such requirements are met, the items discovered in "plain view" may be seized without a warrant.

*Justice v. State*, 765 N.E.2d 161, 165 (Ind. Ct. App. 2002). In *Justice*, we found that a police officer's warrantless seizure of compact discs from defendant's car was permitted because the officer "had probable cause to believe that the compact discs would be useful as evidence of the burglary he was there to investigate." *Id*. at 166.

[14]    In the instant case, Bixler was seated in his garage when the officers investigating the fire approached to speak with him. While standing in Bixler's driveway, one of the officers observed a teal hat and orange ski mask in plain view in Bixler's garage. Based on the information provided by Orban, *i.e.* that he had seen Bixler behind Daniels's house wearing a teal hat and orange ski

mask minutes prior to the fire, the incriminating character of the items was immediately apparent, and the officers had probable cause to believe that the items would be useful as evidence of the arson.

[15] Furthermore, we find that the officers were lawfully on Bixler's property when they observed the hat and ski mask. "[P]olice entry onto private property and their observations do not violate the Fourth Amendment when the police have a legitimate investigatory purpose for being on the property and limit their entry to places visitors would be expected to go, such as walkways, driveways, and porches." *State v. Seidl*, 939 N.E.2d 679, 683-84 (Ind. Ct. App. 2010) (quoting *Trimble v. State*, 842 N.E.2d 798, 802 (Ind. Ct. App. 2006). The officers were legitimately pursuing an arson investigation when they entered upon Bixler's property and, in doing so, ventured only onto Bixler's driveway. Bixler was sitting in his garage with the garage door open when the officers approached. The incriminating items were nearby in the garage and plainly visible to the officers. Accordingly, we find that the trial court did not abuse its discretion in admitting the hat and ski mask.

[16] Even if the trial court abused its discretion in admitting the ski mask and hat, any such error was harmless. We do not reverse convictions based on the improper admission of evidence where that evidence is harmless. *Edmond v. State*, 790 N.E.2d 141, 146 (Ind. Ct. App. 2003). Orban testified that despite the ski mask and hat, he was "one hundred percent sure" the man behind Daniels's house was Bixler because he had on the same clothes as earlier in the day and he was using the motorized scooter that Bixler regularly used. Tr. p.

182. Additionally, a picture of the hat and ski mask as they were found in Bixler's garage was admitted into evidence without objection by Bixler. Any possible error in the admission of these items was harmless.

## III. Sufficiency of Evidence

[17] When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original).

[18] The probative evidence and reasonable inferences supporting the verdict are as follows: Orban witnessed Bixler at the back of Daniels's house near the origin point of the fire just minutes before Orban's wife noticed the fire. Orban saw that Bixler had his three-wheeled motorized scooter with him and saw Bixler

throw a red container into the adjacent yard before returning home. Some minutes later, Orban saw Bixler carrying his five-gallon gas container and Orban's wife saw smoke coming from Daniels's house. Officer Morton investigated the scene and found three-wheeled scooter tracks across Daniels's yard leading to the corner of the house where the fire originated. Officer Morton also found a red laundry detergent bottle behind the adjacent house which smelled like gasoline. While emergency responders were arriving, Bixler was sitting in his garage across the street from Daniels's house with his three-wheel scooter nearby. Daniels testified that there had been several incidents between her and Bixler and that she had repeatedly told Bixler to stay off her property. Orban also testified that Bixler told him "he wished he would have burned the whole damn house down." Tr. p. 202.

[19] Bixler argues that there was insufficient evidence to support his conviction because the State's case relied heavily on Orban's testimony and Bixler called into question Orban's credibility as a witness. Specifically, Bixler argues that at the March 2015 deposition, Orban declined to mention Bixler's statement that "he wished he would have burned the whole damn house down." Tr. p. 202. Orban testified that he was not asked specifically about that statement at the deposition and forgot to mention it until afterward. It is the fact-finder's job to make determinations regarding witness credibility and we do not reweigh those determinations on appeal. *Drane*, 867 N.E.2d at 146.

[20] The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.