Daniel L. DAVIDSON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 18S00–9006–CR–430.

Supreme Court of Indiana.

Oct. 29, 1991.

Michael J. Alexander, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

After a jury trial, appellant Daniel L. Davidson was found guilty of murder, a felony, Ind.Code § 35–42–1–1(1) (West Supp.1991) and rape, a class A felony, Ind. Code § 35–42–4–1 (West 1986). He was sentenced to consecutive terms of sixty years for the murder and fifty years for the rape, and assessed a $10,000 fine on each conviction.

Davidson brings this direct appeal, raising four issues:

I. Whether the trial court erred by permitting the State to question a police officer about statements Davidson made while under custodial interrogation without establishing the voluntary nature of the statement and his waiver of counsel, and in failing to grant a mistrial after the officer made a comment concerning Davidson's failure to make certain statements.

II. Whether the trial court erred in permitting the State to file an amended rape count and in joining it for trial with the murder charge.

III. Whether the trial court erred in permitting the State to present DNA identification evidence without first holding a hearing on admissibility outside the jury's presence.

IV. Whether the trial court erred in denying Davidson's motions for change of venue from the county.

The evidence which tends to support the jury's verdict shows that on the evening of November 1, 1988, Davidson and his friend Ronnie Swift went to Michelle Cortwright's house to find some marijuana. Michelle, her boyfriend, and twenty-one year old Lisa Roberts (the victim) were at Michelle's house. The three men soon left, but Davidson and Swift returned to the house later in the evening. Swift brought an ice pick into the house from Davidson's truck; Davidson took the pick into his possession that evening. Davidson expressed interest in a gun Lisa had in her jacket, and he unsuccessfully attempted to purchase it from her.

Davidson and Swift left Michelle's house around midnight; Lisa left shortly thereafter. Davidson returned to Michelle's house at approximately 2 a.m. He made sexual advances toward Michelle; however, she was able to convince him to leave. The phone company reported that at 2:32 a.m., someone used a phone booth near Michelle's home to place a collect call to Lisa's trailer.

Davidson went to Lisa's trailer in the early hours of November 2. He stabbed her multiple times in the chest and head. She also suffered blunt force injuries to her head. She was left in her trailer, with her hands and feet bound together in a fetal position. She was naked, blindfolded, and gagged. Her mother discovered her body two days after the murder.

Lisa had been sexually assaulted; she suffered injuries to her vaginal and rectal areas. Cellmark Laboratory performed DNA (deoxyribonucleic acid) identification tests on pubic hairs found on Lisa. These tests showed that the DNA from the pubic hairs genetically matched the DNA from Davidson's blood, as did DNA from the semen found on Lisa's bedsheet. Davidson admitted to his friend Ronnie Swift that he killed Lisa. Several of her stab wounds were consistent with injuries that could be received from an ice pick. When the police arrested Davidson, he was in possession of Lisa's gun.

*I. Custodial Statement*

Davidson argues the trial court erred when it allowed into evidence a statement Davidson made to the police while under custodial arrest. He says the State failed to establish the voluntary nature of the statement and his waiver of the right to counsel, in violation of the fifth and sixth amendments.

Davidson's fifth amendment claim is that he was coerced into being a witness against himself because his statement was not given voluntarily. He offers no evidence to demonstrate that his statement was coerced in any manner; indeed, he does not

even claim that such evidence exists. The State responds in a modest way, pointing out that Davidson was given the *Miranda* warnings prior to his statement.

■ The nature of Davidson's fifth amendment rights, as applicable to the states under the fourteenth amendment, has been settled by the U.S. Supreme Court, which has held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). Once a defendant makes a claim that governmental coercion led to his confession, the burden shifts to the State to establish a voluntary and intelligent waiver of a defendant's *Miranda* rights. *Johansen v. State* (1986), Ind., 499 N.E.2d 1128. "The sole concern of the Fifth Amendment, on which Miranda was based, is governmental coercion." *Colorado v. Connelly*, 479 U.S. at 170, 107 S.Ct. at 523. The voluntariness of a waiver of the fifth amendment privilege has always depended "on the absence of police overreaching...." *Id.* at 170, 107 S.Ct. at 523. The record in this case is devoid of any evidence or suggestion that the police resorted to pressure to elicit the statement from Davidson. The trial court did not err in allowing the State to offer testimony about Davidson's statement.

■ As for his sixth amendment claim, Davidson argues his statement was erroneously admitted because the State did not establish a knowing and voluntary waiver of counsel. Davidson was informed of his *Miranda* rights, including the right to have an attorney present. He chose to speak briefly. When Davidson later exercised his right to have an attorney present, the officers immediately ceased questioning him. We see no error.

■ Davidson's next contention is that the trial court erred in failing to grant his request for a mistrial. He alleges one of the State's questions to the police officer constituted an impermissible comment on his right to remain silent. The prosecutor asked: "At anytime did [Davidson] tell you

that he had sex with Lisa Roberts?" and the officer responded: "No." This hardly seems like a comment on post-arrest silence, but in any event, Davidson's objection to this question was sustained by the trial court. The court ordered the question and answer stricken from the record, and instructed the jury to ignore completely the question and its answer.

■ The trial court has broad discretion in determining whether to grant a mistrial. *Kelley v. State* (1990), Ind., 555 N.E.2d 140; *Palmer v. State* (1985), Ind., 486 N.E.2d 477. To succeed on appeal from a denial of a motion for a mistrial, an appellant must demonstrate that he was placed in a position of grave peril to which he should not have been subjected. *Kelley*, 555 N.E.2d 140; *Palmer*, 486 N.E.2d 477. The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision. *Kelley*, 555 N.E.2d 140. "The declaration of a mistrial is an extreme action which is warranted only when no other recourse could remedy the perilous situation." *Palmer*, 486 N.E.2d at 483. We seldom find reversible error when the trial court admonishes the jury to disregard the statement made during the proceedings. *Id.* Assuming *arguendo* the prosecutor's question was improper, we think it did not place Davidson in a position of grave peril. The court immediately instructed the jury to disregard the question, the question was early in the lengthy trial, and a great amount of evidence followed. The trial court did not err in denying the request for a mistrial.

## II. Rape Charge and Conviction

Davidson has two complaints concerning the rape conviction. He first argues the trial court erred in permitting the filing and joinder of the rape charge. The information for murder was filed on November 7, 1988. The State filed the information for rape on May 1, 1989, and amended it on May 5, 1989. The two charges were tried together as Counts I and II, respectively.

The joinder statutes do not require that the State simultaneously file all related charges. *Seay v. State* (1990), Ind., 550 N.E.2d 1284. When a defendant has been charged with two or more offenses in two or more informations, the trial court may join the informations for trial if the offenses could have been joined under Indiana Code § 35–34–1–9(a)(2). Under that section of the Code, two offenses may be joined with each offense stated in a separate count when the offenses "are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." Ind. Code § 35–34–1–9(a)(2) (West 1986); *Abner v. State* (1986), Ind., 497 N.E.2d 550, 554.

The murder and rape charges arose from a series of acts committed as part of a single scheme. The events took place on the same morning and against the same victim. Davidson does not indicate why the offenses should not have been joined. There was no error committed by the joinder of these offenses. *See, e.g., Turnpaugh v. State* (1988), Ind., 521 N.E.2d 690 (charged crimes were properly joined when they took place on the same night and were committed against young sisters who were both spending the night in defendant's home).

Davidson next argues there was insufficient evidence to sustain his conviction for rape because there was no evidence of vaginal penetration. Rape is defined by statute in part as sexual intercourse with a member of the opposite sex when the other person is compelled by force. Ind.Code § 35–42–4–1(1) (West Supp.1991). Sexual intercourse is defined as an act that includes any penetration of the female sex organ by the male sex organ. Ind.Code § 35–41–1–26 (West 1986). It is well settled that proof of the slightest degree of penetration is sufficient to sustain a rape conviction. *Rowan v. State* (1982), Ind., 431 N.E.2d 805. Additionally, the factfinder may infer penetration from circumstantial evidence such as the victim's condition soon after the incident. *Id.*

When addressing the issue of sufficiency of the evidence, we will affirm the conviction if a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. We do not reweigh the evidence or assess witness credibility. We consider only the probative evidence and reasonable inferences supporting the verdict. *Chew v. State* (1985), Ind., 486 N.E.2d 516.

Davidson initially argues the trial court erred in denying his motion for judgment on the evidence. After the trial court denied the motion, Davidson presented evidence in his defense. A defendant who offers his own evidence after the trial court denies the motion for judgment on the evidence, however, is precluded from challenging that denial. *Hood v. State* (1990), Ind., 561 N.E.2d 494; *Miller v. State* (1978), 267 Ind. 635, 372 N.E.2d 1168.

As for the sufficiency of the evidence to sustain the conviction, we look to all the evidence before the jury. The evidence presented on Davidson's behalf included his own trial testimony. This testimony was available to the jury for its consideration of Davidson's guilt or innocence. *Cf. Garvin v. State* (1970), 255 Ind. 215, 263 N.E.2d 371 (when a defendant testifies in his own defense, his testimony must be treated by the jury in the same manner as is the testimony of other witnesses in the case); *Reed v. State* (1982), Ind., 438 N.E.2d 704 (defendant may support his defense by taking the witness stand, but in so doing he is bound by the consequences).

The evidence most favorable to the verdict reveals vaginal penetration. The pathologist testified at trial that he discovered pin point hemorrhages (petechiae) around the opening of the victim's vagina, which could indicate vaginal penetration. Davidson told a friend on the evening prior to the attack that he would "like to f——" the victim. After Davidson was arrested, he informed his girlfriend that he had gone to bed with Lisa. Finally, at trial Davidson testified that he had vaginal and anal intercourse with Lisa on the night in question. Of course, Davidson testified the intercourse was consensual and occurred at Michelle's house and not at Lisa's trailer.

Michelle testified Lisa and Davidson did not have intercourse at her house. Davidson's semen was discovered on the bedsheet at Lisa's trailer. It was within the prerogative of the jury to believe Davidson's testimony that he had intercourse with Lisa, and to disbelieve the location and manner in which the intercourse took place. *See Walker v. State* (1965), 246 Ind. 386, 204 N.E.2d 850, *cert. denied*, 382 U.S. 991, 86 S.Ct. 569, 15 L.Ed.2d 478 (1966) (jury has the right to determine the credibility of defendant as a witness and to believe or not believe any part or all of his testimony). There was sufficient evidence of vaginal penetration to sustain the conviction for rape.

### III. DNA Evidence

Davidson argues the trial court erred in allowing the State to present evidence of DNA identification test results without conducting an admissibility hearing outside the presence of the jury. He urges us to adopt the reasoning of the Supreme Court of Bronx County, New York, in *People v. Castro*, 144 Misc.2d 956, 545 N.Y.S.2d 985 (1989). In *Castro*, that court held that a trial court must conduct a pre-trial hearing to determine if the DNA testing laboratory performed the accepted scientific techniques in the case before the court. The judge in *Castro* noted that other jurisdictions have found this inquiry to go to the weight and not the admissibility of the evidence.

In this case, the State offered the testimony of research scientist Dr. Lisa Foreman and biologist Julie Light from Cellmark Laboratory. They testified first about DNA identification testing and Cellmark's procedures in general. The trial court found the foundation for expert scientific opinion testimony had been met, and allowed the witnesses to testify as to the results of the DNA identification tests in this case.

We have recently addressed the issue of DNA identification tests. We concluded that the theory and techniques of DNA identification currently available are capable of producing reliable results and thus admissible as evidence. *Hopkins v. State* (1991), Ind., 579 N.E.2d 1297. As to the question whether the testing laboratory performed the accepted techniques in the particular case, we held "once the trial court has ruled the witness qualified as a matter of law to give expert testimony regarding DNA analysis, subsequent evaluation of that evidence goes only to its weight as a matter of fact." *Id.*, at 1303.

Davidson does not allege that the two witnesses from Cellmark were unqualified to render expert opinions. The record demonstrates that they were eminently qualified to do so. The witnesses were thus able to testify concerning the testing procedures and results in this case.

Any irregularities in the testing procedures go to the weight of the evidence. While it might be that substantiated irregularities would be a basis for prohibiting admission of test results, the lists of irregularities Davidson perceives do not cause us to believe the evidence was erroneously admitted. Dr. Foreman testified that the procedures used by Cellmark for DNA identification are accepted in the scientific community. She indicated that the steps Cellmark uses are documented in the scientific literature. Cellmark has very detailed protocols for the DNA testing as well as detailed quality assurance protocols, and Cellmark conducts three independent reviews of the results before the report is distributed. There was no error in admitting this testimony.

### IV. Change of Venue

Davidson argues the trial court erroneously denied his motion for a change of venue from the county because it failed to hold a hearing on the motion. He filed his first motion for change of venue in May 1989. He alleged that in light of pretrial publicity he would not be able to obtain a fair trial in Delaware County. He attached several local newspaper articles to his motion. The trial court did not hold a hearing on the motion, but "[p]rovisionally denied [the motion] pending voir dire of a Delaware County prospective jury panel."

Record at 102. Davidson did not object to the lack of a hearing.

Davidson filed a second motion for change of venue on January 4, 1990, repeating his earlier contentions and attaching additional newspaper articles. The trial began five days later. Prior to voir dire, the court indicated it would address a preliminary issue and questioned Davidson about his motion for a change of venue. Davidson stated he had no additional evidence and no argument to present. The State responded to the motion, and Davidson then spoke to the issue. The trial court denied the motion, but indicated it would reconsider if during voir dire it appeared that potential jurors could not try the case fairly and impartially.

Indiana Criminal Rule 12 requires a hearing on a motion for change of venue. Davidson did not object at trial to the lack of a hearing on the first motion. His failure to object at trial results in waiver of the alleged error on appeal. *Stovall v. State* (1985), Ind., 477 N.E.2d 252.

As for Davidson's second motion, a trial court has the discretion to postpone ruling on a motion for change of venue pending voir dire. *Lindsey v. State* (1985), Ind., 485 N.E.2d 102. Here, the trial court did eventually hold a hearing on the second motion for a change of venue from the county. "A hearing is a proceeding of relative formality held in order to determine issues of fact or law in which evidence is presented and witnesses are heard." *Stovall*, 477 N.E.2d at 254. Davidson had the opportunity to present additional evidence in support of his motion, and chose not to do so. Davidson was not deprived of a hearing on his motion. *See id.* (a hearing was held when a witness offered evidence and was examined by the parties, and the court reached a conclusion of law based upon the evidence).

We turn now to Davidson's contention that the trial court should have granted his motion. The trial court's decision on a motion for change of venue is reviewable only for an abuse of discretion. *Linder v. State* (1983), Ind., 456 N.E.2d

400. The mere possibility of prejudice is not enough to gain a change of venue; the defendant must show that jurors were unable to set aside preconceived notions of guilt and render a verdict based on the evidence. *Drummond v. State* (1984), Ind., 467 N.E.2d 742. "At the heart of the decision on a motion for change of venue is the right to an impartial jury." *Lindsey*, 485 N.E.2d at 106.

Extensive voir dire was conducted in this case. Potential jurors were questioned collectively and individually about what they may have heard or read concerning the crime. All of the empaneled jurors indicated they could render a verdict based solely upon the evidence presented at trial. Davidson has not alleged otherwise on appeal. He has failed to demonstrate that the jurors were unable to set aside preconceived notions of guilt. We find no abuse of discretion in the denial of his motion. *See id.* (where voir dire reveals that potential jurors are able to set aside preconceived notions of guilt and render a verdict based solely on the evidence, motion for change of venue need not be granted).

The trial court is affirmed.

DeBRULER, GIVAN, DICKSON and KRAHULIK, JJ., concur.