**Christopher NICHOLSON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 48S00–0109–CR–434.

Supreme Court of Indiana.

May 24, 2002.

Patrick R. Ragains, Smith & Ragains, Anderson, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

After a remand from this Court, the trial judge sentenced Christopher Nicholson to life without parole. Nicholson again appeals his sentence, arguing that the State did not prove two statutory aggravators. We conclude that he is correct and thus revise Nicholson's sentence.

1. Ind.Code Ann. § 35–42–1–1 (West 1998).

2. *Id.*

3. *Id.* § 35–43–4–2, 35–43–4–2.5.

4. *Id.* § 35–42–5–1.

5. *Id.* § 35–43–2–1.

6. *Id.* § 35–42–3–3.

## Facts & Procedural History

On or about October 11, 1997, Nicholson tied seventy-eight-year-old Maxine Heitger's arms and legs to her bed, stuffed tissue into her mouth and taped her mouth shut. Nicholson then stole Heitger's credit card and automobile. Heitger died of asphyxiation.

Nicholson was charged with and convicted of murder,[1] felony murder,[2] two counts of theft,[3] robbery,[4] burglary[5] and criminal confinement.[6] The jury recommended that Nicholson receive life without parole.[7] The trial court subsequently ordered two concurrent life-without-parole sentences to run consecutively with three term-of-year sentences of sixty-five, twenty, and three years.

On appeal, we found several errors in the sentencing order. *Nicholson v. State,* 734 N.E.2d 1047 (Ind.2000)(per curiam), *reh'g denied.*[8] We noted that the sentencing order failed to satisfy the heightened sentencing standards for life without parole as set out in *Harrison v. State,* 644 N.E.2d 1243, 1262 (Ind.1995), *after remand,* 659 N.E.2d 480 (Ind.1995), *cert. denied,* 519 U.S. 933, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996).

On remand, the trial court held a new sentencing hearing. It sentenced Nicholson to life without parole, with the following sentencing order:

> The Court finds that [Nicholson] did commit the murder by intentionally killing the victim by committing burglary, robbery and torture, those being the

7. *See id.* § 35–50–2–9.

8. The court had sentenced Nicholson for murder and felony murder for the same killing, imposed two life sentences for a single murder, and gave both a term of years and life for the same offense. *Id.* at 1048.

aggravating circumstances, under [Indiana Code § ] 35–50–2–9. The Court finds aggravating circumstances under said code that [Nicholson] tortured victim while she was alive .... Also, Court finds aggravating circumstances ... that the victim was a victim of criminal confinement, for which [Nicholson] was also convicted. In addressing the alleged mitigating circumstances of remorse the [C]ourt finds that remorse may be present, but is not relevant. The dysfunctional home life is not a mitigating circumstance. [Nicholson] may have been a drug abuser, but the evidence will show that at the time this crime was committed, he had full capacity of all his faculties, his movements and his actions. He stole the car [and] drove it. His mechanical skills were all in coordination and he was capable [of] p[er]forming all those acts. Therefore, [Nicholson] was not under the influence of any alcohol or drugs at the time. Those are not mitigating circumstances.

(Appellant's App. at 1.)

## I. Sufficiency of the Aggravators

Nicholson argues on appeal that the State did not prove beyond a reasonable doubt the statutory aggravators of intentionally killing the victim while committing a robbery, Ind.Code Ann. § 35–50–2–9(b)(1)(G) (West 1998), and torturing the victim while she was alive, *Id.* § 35–50–2–9(b)(11). Neither party addresses the third aggravator found by the trial court, that Heitger was the victim of criminal

9. The court's order is minimalist. Only a full and detailed recitation of the trial court's reasons for imposing the death penalty or life in prison without parole can allow us to ensure that these penalties are not imposed arbitrarily or irrationally.

confinement for which Nicholson was convicted.[9] *Id.* § 35–50–2–9(b)(13)(C).

 Sentencing decisions rest within the discretion of the trial court, and we review such decisions for an abuse of discretion. *Monegan v. State,* 756 N.E.2d 499, 501 (Ind.2001) (citations omitted). The same standards apply in imposing a sentence of life without parole as for the death penalty,[10] including the degree of specificity required in explaining the factors and weighing process that led to the sentence. *Holsinger v. State,* 750 N.E.2d 354, 362 (Ind.2001). In *Harrison v. State,* 644 N.E.2d at 1262 (citations omitted), we established the following steps:

> The trial court's statement of reasons (i) must identify each mitigating and aggravating circumstance found, (ii) must include the specific facts and reasons which lead the court to find the existence of each such circumstance, (iii) must articulate that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence, and (iv) must set forth the trial court's personal conclusion that the sentence is appropriate punishment for this offender and this crime.

 We first address the trial court's third aggravator, that Heitger was a victim of criminal confinement. Indiana Code § 35–50–2–9(a) requires the State to "alleg[e], on a page separate from the rest of the charging instrument, the existence of at least one (1) of the aggravating circumstances listed in subsection (b)." While Nicholson's conviction for criminal confine-

10. A court may impose the death penalty or life without parole if the State proves at least one aggravator beyond a reasonable doubt and the court finds that the mitigating circumstances are outweighed by the aggravating circumstances. *See* Ind.Code Ann. § 35–50–2–9(k) (West 1998); *West v. State,* 755 N.E.2d 173, 185 (Ind.2001) (citation omitted).

ment could have supported a life without parole sentence under Ind.Code Ann. § 35–50–2–9(b)(13)(C), it was error for the trial court to list this as an aggravator because the State did not allege it. (R. at 102–03.)

■ *A. Evidence of Intentionality.* The evidence reveals that Nicholson bound Heitger's arms and legs to bedposts, stuffed tissue paper inside her mouth, taped her mouth shut, and wrapped a ligature tightly around her neck. (R. at 568, 833, 836–39.) He did not obstruct the airflow through the victim's nose, nor did he sexually or physically assault the victim. (R. at 851–52.) Heitger died of asphyxia, caused by the material inside her mouth becoming lodged in her throat and the position of her body, which caused difficulty in breathing. (R. at 846.)

The statutory aggravator relied on by the trial court required an intentional killing. Ind.Code Ann. § 35–50–2–9(b)(1)(B), (G) (West 1998). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." *Id.* § 35–41–2–2(a). In this case, we cannot conclude that it was Nicholson's "conscious objective" to kill Heitger. Rather, Nicholson prevented her interference with the robbery by restraining her movement and preventing her from calling for help.[11] While we have no trouble upholding the murder conviction as Nicholson engaged in the conduct knowingly and with utter disregard for the victim's well-being, the evidence does not prove beyond a reasonable doubt that it was Nicholson's intent to kill.

*B. Torture Aggravator.* The second aggravator was an allegation that Nicholson tortured the victim while she was alive.

11. Although the State argues that the use of the ligature amounted to the use of a deadly weapon sufficient to support an inference of intent to kill, our review of the record does

*See* Ind.Code Ann. § 35–50–2–9(b)(11)(C) (West 1998). This case is our first encounter with torture as an aggravating circumstance.

The statute does not define "torture." Webster's Dictionary defines it as "the infliction of intense pain (as from burning, crushing, wounding) to punish or coerce someone; torment or agony induced to penalize religious or political dissent or nonconformity; to extort a confession or a money contribution, or to give sadistic pleasure to the torturer." Webster's Third New International Dictionary 2414 (1993).

■ The State argues that the torture aggravator is satisfied by proof of infliction of severe physical or mental pain. This alone surely cannot be sufficient. If such were the case, any stabbing or shooting victim would also be tortured. The other aggravators listed in Ind.Code Ann. § 35–50–2–9(b)(11), "burned" and "mutilated," further suggest that the legislature intended something more than simply the infliction of severe physical or mental pain to satisfy the torture aggravator.

We conclude that the torture aggravator requires something more: an appreciable period of pain or punishment intentionally inflicted and designed either to coerce the victim or for the torturer's sadistic indulgence.

■ Put another way, torture is the gratuitous infliction of substantial pain or suffering in excess of that associated with the commission of the charged crime. Although the victim here undoubtedly experienced extreme suffering, the evidence

not support this conclusion. (Appellee's Br. at 4–5.) The ligature was part of the elaborate bindings and was used as a means of restraint rather than as a deadly weapon.

does not show that the events fit the definition of torture.

## II. Revision of Sentence

As neither of the charged aggravators support the sentence of life without parole, we have three options: (1) remand the matter to the trial court for clarification or a new sentencing determination, (2) affirm the sentence if the error is harmless, or (3) independently reweigh the proper aggravating and mitigating circumstances. *See Bivins v. State*, 642 N.E.2d 928, 957 (Ind. 1994), *cert. denied*, 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996). We elect appellate reweighing.

Without the presence of any statutory aggravator, a life without parole sentence is impermissible. Therefore, we will impose a term of years for Nicholson's convictions of murder, robbery as a class B felony and criminal confinement as a class D felony.[12]

The presumptive sentence for murder is fifty-five years, with a possible enhancement of up to ten years. Ind.Code Ann. § 35-50-2-3(a) (West 1998). For class B felonies, the presumptive term is ten years, with a possible enhancement of ten additional years. *Id.* § 35-50-2-5. And for class D felonies, the presumptive term is one and a half years, with a possible enhancement of one and a half years. *Id.* § 35-50-2-7.

■ We conclude consecutive sentences and full enhancements on each count are warranted. In his pre-sentence memorandum, Nicholson profered four mitigating circumstances: (1) remorse, (2) a difficult childhood, (3) the inability to conform his conduct due to substantial impairment from alcohol and drug intoxication, and (4) the potential to be a productive member of society within a structured, controlled environment.[13] The trial court assigned little to no weight to each of these proffered mitigators. We agree.

■ At the sentencing hearing, Nicholson made a statement to the court expressing remorse. Although he remarked that he was "deeply and genuinely sorry for the death of Mrs. Heitger," he criticized the proceedings for not demonstrating his "true intentions and acts." (R. at 1635–36.) He continued by stating, "I never wanted to be involved in any way in the death of Mrs. Heitger. And I never intended that result." (R. at 1636.) Nicholson's equivocal statement fell short of a full acceptance of responsibility. *See Bonds v. State*, 721 N.E.2d 1238, 1243 (Ind.1999). We assign low weight to this mitigator.

■ The pre-sentence memorandum also listed Nicholson's "dysfunctional, chaotic and [u]nstable" home life growing up as a mitigator. (R. at 1595.) Among oth-

---

**12.** Although the original convictions were for robbery as a class A felony and criminal confinement as a class B felony, (R. at 292), both must be reduced because the enhancement relied upon in both original convictions was the death of the victim. *See Hulfachor v. State*, 735 N.E.2d 214, 218 (Ind.2000) (citation omitted). We previously ordered that the felony murder conviction be vacated because there was only one victim, and the theft and burglary charges merge into robbery.

**13.** Two additional mitigators were argued during the sentencing hearing. Nicholson's

attorney argued that a lengthy imprisonment will cause undue hardship to Nicholson's family and that few inmates in the Indiana Department of Corrections reach the age of seventy. (R. at 1426–31, 1632.) Nicholson presented no evidence to demonstrate that the hardship to his family would be any worse than that normally suffered by a family whose relative is imprisoned. Additionally, we cannot see how the age of other prisoners is relevant. We find no mitigating circumstance on either point.

er things, the report described Nicholson's surprise encounter with a burglar at the age of five, a grade-altering scam when Nicholson was in high school, and his failures at sports. But Nicholson himself seems to contradict that his home life was a mitigating circumstance. In his address to the court, he said:

> I have a wonderful and loving family. I never wanted for anything material.... [M]ost people would look and see a wonderful opportunity and there was a wonderful and great extreme chance and opportunity for me. The choices that I made for whatever reasons ... are the choices that I was free to make and to have to live with.

(R. at 1634.) We also note that Nicholson was thirty-six years old at the time of these crimes. We assign low weight to this mitigator.

 As for intoxication as a mitigator, the record demonstrates that Nicholson's act of restraining the victim took time and required a significant degree of physical dexterity. (*See* R. at 833.) We think this mitigator was not proven. And as for Nicholson's final mitigator, that he would benefit from a controlled environment, it proves, if anything, that the structured life of prison will be most beneficial to Nicholson's productivity.

On the other hand, ample evidence supports numerous aggravators of some considerable weight. First, the victim was a seventy-eight-year-old widow who lived alone and had no family. *See* Ind.Code Ann. § 35–38–1–7.1(b)(5) (West 1998). Nicholson took advantage of these circumstances in perpetrating his crimes. Second, Nicholson has a lengthy history of criminal and delinquent activity. *See id.* § 35–38–1–7.1(b)(2). His prior encounters with the law have not dissuaded him from further criminal acts. Finally, the nature and circumstances of the crimes commit-

ted—the elaborate binding and gagging of an elderly widow—demonstrate a high level of criminal purposefulness and moral culpability. *See id.* § 35–38–1–7.1(a)(2).

We find the aggravating circumstances outweigh the mitigating circumstances by a sufficient magnitude that maximum and consecutive sentences should be imposed.

### Conclusion

We remand with instructions to impose consecutive sentences of sixty-five years on Count I, twenty years on Count V, and three years on Count VII.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.