## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 29 2020, 8:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Evan J. Schaffer,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 29, 2020

Court of Appeals Case No.
18A-CR-2960

Appeal from the Lawrence
Superior Court

The Honorable John M. Plummer,
III, Judge

Trial Court Cause No.
47D01-1704-MR-560

**Crone, Judge.**

# Case Summary

[1] Following a jury trial, Evan Schaffer was convicted of murder, level 6 felony pointing a firearm, class A misdemeanor carrying a handgun without a license, and class B misdemeanor battery. The trial court sentenced him to an aggregate term of sixty-three and a half years. Schaffer raises numerous issues on appeal including: (1) whether the trial court was required to hold a hearing on his amended motion for change of venue; (2) whether the trial court abused its discretion in denying his motion for change of venue; (3) whether the State presented sufficient evidence to rebut his self-defense claim; (4) whether the trial court abused its discretion in instructing the jury; (5) whether the trial court abused its discretion during sentencing; and, (6) whether his sentence is inappropriate in light of the nature of the offenses and his character. We affirm.

# Facts and Procedural History

[2] In April 2017, Schaffer was living with his aunt and uncle, Matt and Elizabeth Franklin, in Orleans, Indiana. His cousin, Zachary Franklin, as well as Zachary's friends, Jacey Lewis and Samuel Payton, also lived in the home. On April 22, Schaffer, his aunt, his cousin, and the two friends were hanging out drinking alcohol and eating dinner when they decided to go fishing at a quarry in Bedford. Schaffer was drinking both beer and whiskey. Around 10:30 p.m., they got into his aunt's black pickup truck and drove to Bedford. They fished for a few hours, and Schaffer continued to drink alcohol. While fishing, Schaffer became upset while text messaging with his girlfriend which caused him to throw his cell phone into the quarry.

[3] Around 1:00 a.m. on April 23, the group was done fishing, and they decided to go to McDonald's in Bedford. At the same time, Justin Lampkins, his girlfriend, Jennifer Patterson, and his friend, Joshua Grissom, decided to stop at the same McDonald's on their way back from a trip to a casino in French Lick. When Lampkins arrived in the drive-through line, there were two vehicles in front of his: a red sedan, and the black pickup truck carrying Schaffer and his group.

[4] After Schaffer's group ordered, his aunt, who was driving, pulled the truck forward toward the first window but not far enough so that the red sedan could reach the order board. At that point, somebody honked a horn. Schaffer and Samuel decided to exit the truck and confront the people in the red sedan. The people in the sedan pointed to Lampkins's vehicle. Schaffer approached Lampkins's truck and punched Lampkins through the open driver's side window. Lampkins told Grissom to call 911. Two McDonald's employees who happened to be outside the store tried to intervene and defuse the situation by directing Schaffer back to his truck. Schaffer and Lampkins were yelling at each other. The employees "finally got [Schaffer] back to his truck and then he came back again and done[sic] the same exact thing," so the employees tried again. Tr. Vol. 7 at 71. One of Schaffer's friends tried to reason with Schaffer and push him back, but Schaffer resisted. Even while back at his truck, Schaffer continued to attempt to return to Lampkins's vehicle. Patterson saw Schaffer retrieve a handgun from the truck.

While Grissom was still on the phone with 911 dispatch reporting the incident, Lampkins exited his vehicle, taking with him a small tire-knocker he kept by his seat. The tire-knocker had the appearance of a "little tiny club" that was approximately a foot long. *Id.* at 185. As Lampkins exited his vehicle and began walking toward Schaffer with the tire-knocker in hand, Grissom saw Schaffer draw his gun and point it at Lampkins's head. Lampkins slapped the gun away from his face, put his hand on Schaffer's neck, and pushed Schaffer backward away from the other people in the drive-through line. Although Lampkins had the tire-knocker in his hand, he did not swing it or hit Schaffer with it. As Lampkins was pushing Schaffer backward, Schaffer raised the gun toward Lampkins's chest and fired. Lampkins immediately dropped to the ground.

After shooting Lampkins, Schaffer walked away, and the other members of his group picked him up in the truck and drove off. Once in the truck, Schaffer told one of his friends that he had just "ruined [his own] life." Tr. Vol. 8 at 119. Just before the truck was stopped by police, Schaffer threw something out the window. Officers found a 9-millimeter Taurus handgun approximately eighteen feet from the truck. Forensic examination revealed one of Schaffer's fingerprints on the magazine of the gun.

Lampkins was transported to the hospital and died around 2:30 a.m. on April 23, 2017. Lampkins had suffered a gunshot wound to the left upper chest, and his cause of death was massive blood loss. A bullet was located in his spine,

just below the breastbone. Forensic examination confirmed that the bullet was fired by the Taurus handgun.

[8]     On April 25, 2017, the State charged Schaffer with murder, level 6 felony pointing a firearm, class A misdemeanor carrying a handgun without a license, and class A misdemeanor battery. The State subsequently amended the battery charge to a class B misdemeanor. On May 25, 2017, Schaffer filed a motion for change of venue alleging that he would be unable to receive a fair trial in Lawrence County. The trial court held a hearing on the motion on April 18, 2018. On May 2, 2018, before the trial court issued a ruling on the motion, Schaffer moved to withdraw the motion. The trial court issued an order taking the motion to withdraw under advisement. Thereafter, on July 27, 2018, Schaffer filed an amended motion for change of venue on essentially the same grounds, stating that the amendment was simply intended to "supplement[] his original Verified Motion for Change of Venue." Appellant's App. Vol. 4 at 17. Just prior to the start of jury selection, counsel for both parties met in chambers with the trial court. The trial court indicated that it intended to defer ruling on the amended motion until after voir dire was conducted to see if an impartial jury could be selected.

[9]     Voir dire commenced on August 7, 2018, and concluded on August 9, 2018, with the selection of a full jury as well as four alternate jurors. Following a lengthy trial, the jury found Schaffer guilty as charged. The trial court held a sentencing hearing on November 20, 2018, and sentenced Schaffer to an aggregate executed sentence of sixty-three and a half years. This appeal ensued.

# Discussion and Decision

## Section 1 – Schaffer has waived any error in the trial court's failure to hold a hearing on his amended motion for change of venue.

[10]     As noted above, approximately one month after he was charged, Schaffer filed a motion for change of venue asserting that he could not receive a fair trial in Lawrence County. The trial court held a hearing on the motion in April 2018, during which Schaffer presented several local radio and newspaper articles regarding the incident which contained, among other things, information about Schaffer's criminal history and also identified Lampkins as a Marine. Schaffer argued that this allegedly prejudicial media coverage regarding the incident warranted a change of venue. However, a few weeks later, before the court had issued a ruling on the motion, Schaffer moved to withdraw the motion. The trial court took the motion to withdraw under advisement.

[11]     Approximately two weeks before the start of trial, on July 26, 2018, Schaffer filed an amended motion for change of venue. Schaffer stated that the amended motion was intended to supplement his original motion. Schaffer did not alter the grounds for seeking a change of venue but added a claim that in a recent Lawrence County case filed before Schaffer's, the court was unable to identify and select an impartial jury due to pretrial publicity. Schaffer noted that some of the prospective jurors in that case during voir dire had referenced their knowledge of "the McDonalds case" and "made statements relating to Mr. Schaffer's guilt or innocence." Appellant's App. Vol. 4 at 18.

[12] During a subsequent in-chambers meeting held one or two days before trial, when asked by defense counsel how it intended to rule on the amended motion for change of venue, the trial court indicated it would defer ruling on the motion until after voir dire in order to see if an impartial jury could be selected. Appellant's Supp. App. Vol. 2 at 5; *see Lindsey v. State*, 485 N.E.2d 102, 106 (Ind. 1985) (a trial court has discretion to postpone ruling on motion for change of venue pending voir dire). At the conclusion of voir dire, a jury was selected, and the case proceeded to trial without objection from defense counsel regarding the lack of a second hearing on the amended motion for change of venue.

[13] Indiana Code Section 35-36-6-1(b) provides that when a motion for a change of venue from the county is filed alleging that bias or prejudice against the defendant exists in that county, the court shall hold a hearing on the motion. *See also* Ind. Criminal Rule 12(A) (providing that a motion for change of venue from the county shall set forth facts in support of the basis or bases for the change and, after a hearing on the motion, the court's ruling is reviewed only for abuse of discretion). Schaffer acknowledges that the trial court held the required hearing on his original motion, but he contends that the trial court committed reversible error in failing to conduct a second hearing on his amended motion.

[14] Even assuming that the trial court was required to hold a second hearing following Schaffer's filing of an amended motion, our supreme court has stated that a defendant's failure to object at trial to the lack of hearing on a motion for

change of venue results in waiver of the alleged error on appeal. *Davidson v. State*, 580 N.E.2d 238, 244 (Ind. 1991). The purpose of requiring a party to contemporaneously object is to prevent a party from sitting idly by and appearing to assent to a ruling by the court only to cry foul when the outcome goes against him. *Hale v. State*, 54 N.E.3d 355, 358-59 (Ind. 2016). Schaffer did not object at trial to the lack of hearing on his amended motion. Consequently, any error is waived.

## Section 2 – Schaffer cannot demonstrate that the trial court abused its discretion in ultimately denying his motion for change of venue.

[15] Next, Schaffer contends that the trial court abused its discretion in denying his motion for change of venue. Specifically, he claims that the entire jury panel "was so infected with inflammatory, pre-trial publicity that the denial of his request for a change of venue resulted in fundamental, structural error." Reply Br. at 6. "At the heart of the decision on a motion for change of venue is the right to an impartial jury." *Lindsey*, 485 N.E.2d at 106. "A fair trial in a fair tribunal is a basic requirement of due process." *Ward v. State*, 810 N.E.2d 1042, 1048-49 (Ind. 2004) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). A juror's verdict must be impartial "regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies." *Id*. (quoting *Morgan v. Illinois*, 504 U.S. 719, 727 (1992)). The trial court's decision on a motion for change of venue is reviewable only for an abuse of discretion. *Davidson*, 580 N.E.2d at 244. "The mere possibility of

prejudice is not enough to gain a change of venue; the defendant must show that jurors were unable to set aside preconceived notions of guilt and render a verdict based on the evidence." *Id*.

[16] Our supreme court has repeatedly held that to prove that an error occurred in the denial of a motion for change of venue from the county, the defendant must show that he exhausted his peremptory challenges in an effort to secure juror impartiality and also that the jury was so prejudiced against him that it was unable to render a verdict in accordance with the evidence. *Bixler v. State*, 471 N.E.2d 1093, 1100 (Ind. 1984), *cert. denied* (1985). As noted by the State, a total of seventeen peremptory strikes were used between the parties, but it is unclear from the record how many strikes were exercised by either party. Schaffer concedes that "the record does not show that [he] used all of his peremptory challenges" and he makes no assertion that he did, in fact, exhaust his peremptory challenges. Reply Br. at 6. It is the appellant's duty to provide a record that reflects the error alleged. *Williams v. State*, 690 N.E.2d 162, 176 (Ind. 1997). Because Schaffer is unable to demonstrate that he made the "maximum permissible effort to secure juror impartiality," he cannot demonstrate that the trial court's denial of his motion for change of venue constituted an abuse of discretion. *Myers v. State*, 887 N.E.2d 170, 181 (Ind. Ct. App. 2008) (defendant

could not claim that trial court erred in denying motion for change of venue on appeal when he used only eight of his ten peremptory challenges).[1]

## Section 3 – The State presented sufficient evidence to rebut Schaffer's self-defense claim.

[17] Schaffer asserts that the State presented insufficient evidence to rebut his self-defense claim. The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency claim. *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002). We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Id.*

[18] Self-defense is a legal justification for an otherwise criminal act. *Bryant v. State*, 984 N.E.2d 240, 250 (Ind. Ct. App. 2013), *trans. denied*. Indiana Code Section 35-41-3-2(c) provides that "[a] person is justified in using reasonable force against any other person to protect the person … from what the person reasonably believes to be the imminent use of unlawful force." To prevail on his self-defense claim, Schaffer was required to show that he: "(1) was in a place where he had a right to be; (2) acted without fault; and (3) was in reasonable

---

[1] While Schaffer argues that all seated jurors "had some prior knowledge about the case" due to pretrial publicity, Appellant's Br. at 44, it is well established that jurors "need not be totally ignorant of the facts or issues involved in the case." *Whiting v. State*, 969 N.E.2d 24, 28 (Ind. 2012) (citation omitted). Rather, "a constitutionally impartial juror is one who is able to lay aside his or her prior knowledge and opinions, follow the law as instructed by the trial judge, and render a verdict based solely on the evidence presented in court." *Id.* Schaffer points to no evidence disclosed during voir dire that any of the seated jurors were unable to meet these standards.

fear o[r] apprehension of bodily harm." *Richardson v. State*, 79 N.E.3d 958, 964 (Ind. Ct. App. 2017), *trans. denied*. A person who provokes, instigates, or participates willingly in the violence does not act without fault for the purposes of self-defense. *Shoultz v. State*, 995 N.E.2d 647, 660 (Ind. Ct. App. 2013), *trans. denied*. Indeed, a person is not justified in using force if, among other things, "the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action." Ind. Code § 35-41-3-2(g)(3).

[19] When a claim of self-defense finds support in the evidence, the State bears the burden of negating at least one of the necessary elements. *Id.* The State may meet its burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by relying on the sufficiency of the case-in chief. *Quinn v. State*, 126 N.E.3d 924, 927 (Ind. Ct. App. 2019). Whether the State has met its burden is a question for the trier of fact. *Kimbrough v. State*, 911 N.E.2d 621, 635 (Ind. Ct. App. 2009). If a defendant is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated beyond a reasonable doubt. *Hollowell v. State*, 707 N.E.2d 1014, 1021 (Ind. Ct. App. 1999).

[20] Here, the State presented sufficient evidence to rebut Schaffer's claim of self-defense. The evidence demonstrated that Schaffer was the initial aggressor and instigated a physical altercation with Lampkins when he approached

Lampkins's vehicle and punched him through the window. He then provoked further confrontation and participated willingly in the violence by then returning to his aunt's vehicle, arming himself, and reapproaching Lampkins. Schaffer argues that Lampkins became the aggressor because he "went after [Schaffer] with the tire knocker" after Schaffer had already communicated an intent to withdraw by "walk[ing] back to Elizabeth's truck." Appellant's Br. at 54. Despite Schaffer's claims on appeal, there was little to no evidence indicating that Schaffer ever withdrew from the encounter or communicated to Lampkins the intent to do so. Rather, the evidence clearly shows Schaffer's instigation and provocation of and willing participation in combat.[2] Schaffer's argument on appeal is simply an invitation for us to reweigh the evidence, which we may not do. In light of the evidence favorable to the convictions, a "reasonable person could say that self-defense was negated beyond a reasonable doubt." *Richardson*, 79 N.E.3d 964. Accordingly, we will not reverse Schaffer's convictions on this basis.

---

[2] The jury was presented with both witness testimony and a surveillance video recording of the event. Contrary to Schaffer's claims, the video evidence does not indisputably contradict the relevant witness testimony. Accordingly, we defer to the trier of fact's determinations regarding the weight of the evidence and the credibility of the witnesses. *Quinn v. State*, 126 N.E.3d 924, 928 (Ind. Ct. App. 2019) (citing *Love v. State*, 73 N.E.3d 693, 699 (Ind. 2017)).

# Section 4 – The trial court did not abuse its discretion in refusing to give Schaffer's proffered jury instructions on reckless homicide.

[21]     We next address Schaffer's assertion that the trial court abused its discretion in refusing to give his proffered jury instructions on reckless homicide as a lesser included offense of murder. The State objected to Schaffer's proffered instructions, asserting that there was no serious evidentiary dispute regarding whether Schaffer acted knowingly or intentionally when he killed Lampkins by shooting him in the chest at close range. Our supreme court has explained,

> To determine whether to instruct a jury on a lesser included offense, the trial court must engage in a three-part analysis. The first two parts require the trial court to consider whether the lesser included offense is inherently or factually included in the greater offense. If it is, then the trial court must determine if there is a serious evidentiary dispute regarding the element that distinguishes the lesser offense from the principal charge. Here, the distinguishing element between knowing murder and reckless homicide is culpability. *Compare* Ind. Code § 35-41-2-2(b) ("A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so.") *with* Ind. Code § 35-41-2-2(c) ("A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.").

> When considering whether there is a serious evidentiary dispute, the trial court examines the evidence presented by both parties regarding the element(s) distinguishing the greater offense from the lesser one. This involves evaluating the weight and credibility of [the] evidence, and then determining the seriousness of any

resulting dispute. Because the trial court found no serious evidentiary dispute existed, we will reverse only if that finding was an abuse of discretion. In our review, we accord the trial court considerable deference, view the evidence in a light most favorable to the decision, and determine whether the trial court's decision can be justified in light of the evidence and circumstances of the case.

*Leonard v. State*, 80 N.E.3d 878, 885 (Ind. 2017) (some citations and quotation marks omitted).

[22] In other words, the trial court's refusal to give a reckless homicide instruction here would be an abuse of discretion only if there was a serious evidentiary dispute about the elements distinguishing murder from reckless homicide and if, in view of this dispute, the jury could conclude that Schaffer committed reckless homicide instead of murder. *Heavrin v. State*, 675 N.E.2d 1075, 1078 (Ind. 1996). Thus, the question is whether there was a serious evidentiary dispute as to whether Schaffer shot and killed Lampkins recklessly but not knowingly. An instruction on reckless homicide was not warranted if there was no serious evidentiary dispute that Schaffer shot Lampkins with an awareness of a high probability that he was engaged in killing. *Ingram v. State*, 547 N.E.2d 823, 830-831 (Ind. 1989).

[23] Schaffer asserts that there was a serious evidentiary dispute regarding his culpability because the "shooting occurred during an extremely tense and volatile situation" and there was "no evidence that Schaffer aimed at Lampkins's chest." Appellant's Br. at 70. He does not dispute, however, that

he fired the shot into Lampkins's chest at close range. Although he now points to his self-serving testimony denying that he knowingly aimed the gun at Lampkins's chest as creating an evidentiary dispute, he did not make this argument to the trial court or point to this evidence when proffering his instructions. Accordingly, this argument is waived. *See Leatherman v. State*, 101 N.E.3d 879, 885 (Ind. Ct. App. 2018) (noting well-established rule that trial court cannot be found to have erred as to an argument it never had opportunity to consider). Moreover, the jury heard evidence that Schaffer knowingly aimed at and shot Lampkins in the chest, as Schaffer bragged to a jail cellmate, "[I]f I wanted to help [Lampkins], I could have shot him in the leg or his stomach." Tr. Vol. 9 at 223-24.

[24] The evidence presented here gave the trial court sufficient justification to conclude that there was no serious evidentiary dispute that Schaffer was acting with an awareness of a high probability that he was engaged in killing. The evidence need not be "entirely free from doubt," and viewing it in the light most favorable to the trial court's decision here, we agree with the State that the record supports the trial court's refusal to give Schaffer's proffered instructions on reckless homicide. *Heavrin*, 675 N.E.2d at 1078. As stated above, we give the trial court's decision "considerable deference" because the court has the best view of the evidence. *Fish v. State*, 710 N.E.2d 183, 185 (Ind. 1999). We find no abuse of discretion.

# Section 5 – The trial court did not abuse its discretion during sentencing.

[25]     We next address Schaffer's assertion that the trial court abused its discretion during sentencing. Specifically, he argues that the trial court failed to identify or find mitigating factors that were clearly supported by the record and advanced for consideration. We disagree.

[26]     Sentencing decisions are left to the sound discretion of the trial court. *Smallwood v. State*, 773 N.E.2d 259, 263 (Ind. 2002). We will reverse a sentencing decision only if the decision is clearly against the logic and effect of the facts and circumstances before the trial court and all reasonable inferences drawn therefrom. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218. A defendant who alleges that the trial court failed to identify a mitigating factor has the burden to establish that the proffered factor is both significant and "clearly supported by the record." *Id.* at 493. A trial court does not err in failing to find mitigation when a mitigation claim is "highly disputable in nature, weight, or significance." *Rogers v. State*, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), *trans. denied* (2008). "When a defendant offers evidence of mitigators, the trial court has the discretion to determine whether the factors are mitigating, and it is not required to explain why it does not find the proffered factors to be mitigating." *Johnson v. State*, 855 N.E.2d 1014, 1016 (Ind. Ct. App. 2006), *trans. denied* (2007).

[27]     Schaffer claims that the trial court erred by not finding six potential mitigating factors listed in Indiana Code Section 35-38-1-7.1(b): (1) the crime was the

result of circumstances unlikely to recur (2) the victim of the crime induced or facilitated the offense; (3) there were substantial grounds tending to excuse or justify the crime, though failing to establish a defense; (4) Schaffer is likely to respond positively to a shorter sentence; (5) Schaffer's character and attitudes indicate that he is unlikely to commit another crime; and (6) Schaffer's imprisonment will result in undue hardship to his family. Schaffer advanced each of these mitigators either during the sentencing hearing or in his sentencing memorandum filed with the trial court.

[28] As for the first three advanced mitigators, we agree with the State that they appear to be an attempt by Schaffer to excuse his behavior by shifting blame to his victim. The trial court did not take kindly to those attempts, emphasizing the instigative role Schaffer played in the conflict with Lampkins, and noting that the evidence clearly established that Schaffer "started the fight, and [Schaffer] finished the fight." Tr. Vol. 11 at 49. The court further repeatedly observed that the jury explicitly rejected Schaffer's self-defense claim. Accordingly, we cannot say that those mitigators are clearly supported by the record.

[29] As for Schaffer's claims that the trial court should have found as mitigating that he is likely to respond positively to a shorter sentence and that his character indicates that he is unlikely to commit another crime, the trial court made numerous observations rejecting those notions. Indeed, the trial court specifically noted that, at the time of the current offenses, Schaffer was out on pretrial release for a serious level 4 felony arson charge. Even so, he was not

deterred from engaging in criminal behavior and possessing a firearm without a license and using that firearm during his conflict with Lampkins. We agree with the trial court that this demonstrated Schaffer's poor character and his disregard for the rule of law. The trial court was within its discretion to decline to assign any mitigating weight to those advanced factors.

[30] Regarding undue hardship to his family caused by his imprisonment, Schaffer argued that his parents will probably not live long enough to see him complete his sentence and further that his daughter was born while he was in jail awaiting disposition in the current case. Schaffer presented no evidence to demonstrate that any hardship suffered would be "undue" in the sense that it would be any worse than that normally suffered by a family whose relative is incarcerated. *See Nicholson v. State*, 768 N.E.2d 443, 448 n.13 (Ind. 2002). We further reject any suggestion by Schaffer that simply because the trial court did not explain why it did not find that factor mitigating, that the court ignored that proposed mitigator. At the outset of its oral sentencing statement, the trial court stated that it "has considered the evidence presented by both the State and the Defense. The Court has read the victim impact statements. The Court has considered the pre-sentence investigation report, as well as the sentencing memorandum filed by the Defense earlier today." Tr. Vol. 11 at 46. Accordingly, it is clear from our review that the trial court considered all of Schaffer's proposed factors but declined to find any of them mitigating. As we noted above, the trial court has the discretion to determine whether the factors are mitigating, and it is not required to explain why it does not find the

proffered factors to be mitigating. *Johnson*, 855 N.E.2d at 1016. Schaffer has failed to show that the trial court abused its discretion during sentencing.

## Section 6 – Schaffer has not met his burden to demonstrate that his sentence is inappropriate.

[31] Schaffer finally requests that we reduce the aggregate sentence imposed by the trial court pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id*. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id*. at 1224. "The question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007).

[32]   Regarding the nature of the offense, the advisory sentence is the starting point that the legislature has selected as an appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). The sentencing range for murder is between forty-five and sixty-five years, with an advisory sentence of fifty-five years. Ind. Code § 35-50-2-3. The sentencing range for a level six felony is between six months and two and a half years, with an advisory sentence of one year. Ind. Code § 35-50-2-7. A person who commits a class A misdemeanor shall be imprisoned for a fixed term of not more than one year. Ind. Code § 35-50-3-2. A person who commits a class B misdemeanor shall be imprisoned for a fixed term of not more than 180 days. Ind. Code § 35-50-3-3. The trial court imposed an aggregate sixty-three-and-a-half-year sentence which exceeds the advisory sentences for the crimes charged but is below the maximum allowable sentence.

[33]   When reviewing the nature of the offense, this Court considers "the details and circumstances of the commission of the offense." *Washington v. State*, 940 N.E.2d 1220, 1222 (Ind. Ct. App. 2011), *trans. denied*. The details and circumstances of Schaffer's offenses illuminate the senselessness of Lampkins's death. Schaffer started a tragic chain of events by overreacting to a minor provocation (honking horn) in a fast food drive-through line. He instigated a physical confrontation with Lampkins, and although he could have walked away and stayed away after punching Lampkins, he instead continued returning and trying to fight. He then made the decision to escalate the violence by arming himself with a handgun, one that he had no license to carry,

threaten Lampkins with it, and then aim and fire it at close range into Lampkins's chest. As noted earlier, "[Schaffer] started the fight, and [Schaffer] finished the fight." Tr. Vol. 11 at 49. The nature of the offenses does not persuade us that a sentence reduction is warranted.

[34] Schaffer fares no better when we consider his character. The character of the offender is found in what we learn of the offender's life and conduct. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Included in that assessment is a review of an offender's criminal history. *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied* (2016). Here, although not extensive, Schaffer does have a troubling criminal history. He has a minimal criminal history in Minnesota that involved reckless driving, and less than two months before his current offenses, Schaffer was charged in Indiana with level 4 felony arson. As observed by the trial court, while Schaffer was out "on pretrial release on [this] serious felony arson charge … he chose to illegally possess a firearm, and consume large amounts of whiskey," which obviously "put people at risk" and contributed to his decision to disregard "the sanctity of human life" and murder Lampkins. Tr. Vol. 11 at 48. We agree with the trial court that Schaffer's behavior demonstrated a clear "disdain for the law" even after he had already been subjected to the "police authority of the State." *Id*. at 48-49. Again, we are not persuaded that a sentence reduction is warranted.

[35] Schaffer has not met his burden to demonstrate that his aggregate sentence is inappropriate in light of the nature of the offenses or his character. We therefore affirm the convictions and sentences imposed by the trial court.

[36]    Affirmed.

May, J., and Pyle, J., concur.